PRESENT: All the Justices

SEBASTIAN ORTIZ

v.  Record No. 072449

COMMONWEALTH OF VIRGINIA

OPINION BY
JUSTICE LEROY F. MILLETTE, JR.
October 31, 2008

FROM THE COURT OF APPEALS OF VIRGINIA

Sebastian Ortiz was convicted by a jury in the Circuit Court of Arlington County of one count of rape of a female child under the age of thirteen in violation of Code § 18.2-61. Ortiz appealed his conviction to the Court of Appeals, which denied Ortiz' petition in an unpublished order. Ortiz v. Commonwealth, Record No. 0587-07-4 (October 30, 2007). We awarded Ortiz this appeal in which he challenges: (1) the trial court's refusal to appoint an expert witness on the suggestibility of children and confirmatory bias, (2) the admission of evidence of subsequent other crimes or bad acts, (3) the exclusion of the victim's prior allegations of sexual abuse against a third party, (4) the victim's competency to testify, (5) the amendment of the indictment on which Ortiz was found guilty, (6) the trial court's denial of Ortiz' motion for a continuance upon the amendment of the indictment, and (7) the sufficiency of the evidence.

BACKGROUND

Applying well-established principles of appellate review, we present the evidence in the light most favorable to the Commonwealth, the prevailing party below. Porter v. Commonwealth, 276 Va. 203, 215-16, 661 S.E.2d 415, 419 (2008); Bishop v. Commonwealth, 275 Va. 9, 11, 654 S.E.2d 906, 907 (2008).

The victim (the child), who was born on January 6, 1998, lived in Arlington County with her mother (the mother) and other family members. Ortiz is the maternal step-grandfather of the child. Ortiz and his wife (the grandmother) also lived in Arlington County until 2005 when they moved to Greenbelt, Maryland.

The child spent substantial time with Ortiz and the grandmother at their Arlington residence and, after 2005, at their Maryland residence. Ortiz routinely picked up the child Fridays after school, then took the grandmother to work in Washington, D.C. Ortiz was alone with the child for several hours until the grandmother returned from work at 10 p.m.

In April 2006, the mother noticed that the child was bringing home new shoes, new clothing, school supplies and sometimes money after spending the weekend at Ortiz' residence. When the mother pressed the child on the reason for her new possessions, the child told the mother that Ortiz had touched

2

her and put "his thing on her" while the grandmother was not there.  The next day, April 19, 2006, the mother reported the alleged abuse to Detective Borelli of the Special Victims Unit of the Arlington County Police Department.

Based upon an interview with the child, which included her description of the sex acts and a picture she drew as explanation, Detective Borelli concluded that the sex acts involved penetration.  Ortiz was arrested on April 24, 2006.

During an interview at the Arlington Police Station with Detective Borelli and another officer who acted as an interpreter, Ortiz was told, falsely, that the police had retrieved his DNA from the child's person.  Ortiz' explanation was that maybe the child had sex with him while he was drunk and asleep because he was often drunk on weekends.

On April 27, 2006, after obtaining consent from the grandmother, detectives conducted a search of Ortiz' Maryland residence.  In a garbage can, the detectives found a receipt for a vaginal cream product from a Washington, D.C. large-chain drugstore.  The receipt, dated October 7, 2005 at 5:06 p.m., bore the name, "Ms. Sebastian Ortiz."  In addition, the detectives found two pornographic videotapes.  The evidence seized by the detectives corroborated the child's earlier statements that she had viewed pornographic tapes and that Ortiz had put cream on her vagina.

3

On June 19, 2006, a grand jury indicted Ortiz on two counts of rape of a female child under the age of thirteen occurring in Arlington County in violation of Code § 18.2-61. The first indictment originally encompassed the period from January 1, 2003 to May 31, 2003, but was amended during Ortiz' case-in-chief, over his objection, to include the period from January 1, 2003 to May 31, 2004. The second indictment originally included June 1, 2003 to December 31, 2003, but was also amended during Ortiz' case-in-chief, over his objection, to include June 1, 2004 to December 31, 2005.

At trial, the child testified that Ortiz began to sexually abuse her when she was four or five years old and continued until she was eight, and that the acts of abuse took place in Ortiz' former Arlington residence as well as at his current Maryland residence. The child's testimony included the following details: Ortiz put cream on her private parts, sprayed something from a bottle on her private part, put his penis in her front private part, and put something white that came out of his penis on her bellybutton. The child further testified that Ortiz put "this baby oil thing" on his penis and sometimes when the child went to the bathroom afterwards "something red came out." Ortiz also showed her movies of "grownups doing something" without clothes on. The evidence also included the child's diary, wherein she wrote, "I wish my

4

dad never do sex with me because I always feel [sic] to do S-E-X with my dad." The child referred only to Ortiz as "dad."

The Commonwealth also introduced the results of a sexual assault nurse examination (SANE exam) conducted on the child. The SANE exam revealed a "notch" or sharp demarcation of the tissue that opened in the shape of a "V" at about four o'clock on the child's hymen, which could have been consistent with penetration. The conclusion of the SANE report was that the child's genital findings were abnormal.

Ortiz testified that he and the grandmother had taken care of the child since she was born, giving her "support and maintenance," food, furniture, and clothing. Additionally, Ortiz testified that when he picked up the child on Fridays, he always told the grandmother to go with him "so that [he] would not be accused of anything." When asked by the Commonwealth if Ortiz was ever alone with the child, he replied, "No. I never was alone with her. . . . No, I was never alone with [the child]. I don't know why you keep accusing me of that."

At the conclusion of Ortiz' trial, the jury found Ortiz guilty of raping the child, in violation of Code § 18.2-61, in accordance with the amended second indictment covering the time frame of June 1, 2004 to December 31, 2005. The jury's sentence of twenty years' imprisonment was imposed by the trial court as a final judgment. Ortiz' appeal to this Court

5

followed the Court of Appeals' denial of his petition for appeal.

## DISCUSSION

### Standard of Review

We will address each of Ortiz' assignments of error in turn. As each assignment of error reviewed on the merits is governed by the same standard of review, we set forth the standard to be applied throughout our analysis at the outset. We will apply an abuse of discretion standard upon our review of the following issues that Ortiz raises: (1) motion for continuance – see Haugen v. Shenandoah Valley Department of Social Services, 274 Va. 27, 34, 645 S.E.2d 261, 265 (2007); (2) competence of the child witness – see Mackall v. Commonwealth, 236 Va. 240, 253, 372 S.E.2d 759, 767 (1988); and (3) admissibility of certain evidence – see Gillespie v. Commonwealth, 272 Va. 753, 760, 636 S.E.2d 430, 434 (2006); see also Dagner v. Anderson, 274 Va. 678, 685, 651 S.E.2d 640, 644 (2007).

### Appointment of Expert

Ortiz filed pretrial motions asking the trial court to appoint Dr. Matthew H. Scullin as an expert witness and to permit Dr. Scullin to educate the jury on children's suggestibility, suggestive interviewing techniques, and confirmatory bias, which Ortiz' counsel described as the impact

6

on a child when he or she is interviewed many times about the same thing.  Ortiz argued that the jury had insufficient knowledge about these phenomena.

The trial court refused to appoint Dr. Scullin and denied Ortiz' motion to call Dr. Scullin as an expert witness, holding, "I don't think [this type of information is] beyond the realm of common experience of the jurors who are highly educated in this jurisdiction."  At trial, the court denied Ortiz' renewed motion to call Dr. Scullin.

On appeal to this Court, Ortiz contends the Court of Appeals erred by ruling that he failed to show a particularized need for an expert witness and that the evidence did not show his need for an expert to present an adequate defense.  Ortiz argues that without expert assistance, he was denied the opportunity to fairly and fully cross-examine the Commonwealth's witnesses.  Ortiz also argues that his expert witness would also have had the opportunity to educate the jury about Ortiz' theory that he was falsely accused due to suggestive interviewing techniques that led to the child's fabricated account of events.

Ortiz' assignment of error relates only to the trial court's denial of his motion to *appoint* Dr. Scullin as an expert.  It does not relate to the trial court's denial of his motion to permit Dr. Scullin to testify.  Only errors assigned

in Ortiz' petition for appeal will be noticed by this Court. Rule 5:17(c). Ortiz has therefore waived his argument regarding the exclusion of Dr. Scullin's testimony.

The issue whether the trial court erred by refusing to appoint Dr. Scullin is moot based on the fact that Ortiz ultimately retained Dr. Scullin and had him review all of the interviews in this matter. Ortiz' retention of Dr. Scullin obviated any need for his appointment by the trial court. Further, Ortiz did not argue any prejudice regarding the amount of time he had to obtain the expert, nor did he request a continuance to provide additional time for his expert to prepare. Thus, we will not consider this alleged error on appeal.

### Admissibility of Evidence of Other Crimes

Ortiz assigns error to the Court of Appeals' holding that evidence of other crimes or bad acts was admissible. The other crimes or bad acts evidence consists of the child's testimony about the ongoing abuse by Ortiz which continued into 2006, the two pornographic videotapes, and the drugstore receipt dated October 7, 2005 for a vaginal cream product. The items of physical evidence were seized from Ortiz' Maryland residence in April 2006. Because this evidence was from a time period subsequent to the dates charged in the original indictments, Ortiz argues that evidence is irrelevant, is offered to show he

had a propensity to commit the crime charged, and its prejudicial effect outweighs its probative value.

The Commonwealth argues the evidence was not offered to show Ortiz' propensity to commit the crime charged. Instead, the evidence proved the parties' relationship and negated the possibility of accident or mistake. Furthermore, the evidence corroborated the child's account of the sexual abuse.

As a general rule, evidence which shows or tends to show that the accused is guilty of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is not admissible to show the accused's commission of the particular crime charged. Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970). However, numerous exceptions to this rule authorize the admission of "bad acts" evidence. Specifically, other crimes evidence is admissible when it "shows the conduct or attitude of the accused toward his victim[;] establishes the relationship between the parties[;] or negates the possibility of accident or mistake," Moore v. Commonwealth, 222 Va. 72, 76, 278 S.E.2d 822, 824 (1981); or shows motive, method, intent, plan or scheme, or any other relevant element of the offense on trial. Scott v. Commonwealth, 228 Va. 519, 527, 323 S.E.2d 572, 577 (1984).

Evidence of subsequent sexual offenses committed by the accused against the same victim is also admissible if it complies with one of these exceptions. Moore, 222 Va. at 76-77, 278 S.E.2d at 825.

> [I]t is well settled that in a prosecution for incest, evidence of acts of incestuous intercourse between the parties other than those charged in the indictment or information, *whether prior or subsequent thereto,* is, if not too remote in point of time, admissible for the purpose of throwing light upon the relations of the parties and the incestuous disposition of the defendant toward the other party, and to corroborate the proof of the act relied upon for conviction . . . . The fact that some of the other offenses were remote in point of time from the act under investigation does not of itself render such evidence incompetent, where the acts were repeatedly done up to a comparatively recent period and were all apparently inspired by one purpose.

Id. at 77, 278 S.E.2d at 825 (quoting Brown v. Commonwealth, 208 Va. 512, 516-17, 158 S.E.2d 663, 667 (1968)). Evidence that falls into the enumerated exceptions must meet an additional requirement: its legitimate probative value must exceed its incidental prejudice to the defendant. Guill v. Commonwealth, 255 Va. 134, 139, 495 S.E.2d 489, 491-92 (1998).

The admissibility of the other crimes evidence at issue becomes apparent when we consider the extensive period of abuse alleged by the child against Ortiz. Although the two indictments originally charged Ortiz with sexual abuse during a time period extending from January 1, 2003 through December 31,

10

2003, the indictments were amended during the trial to conform to the evidence to encompass a time frame of January 1, 2003 through December 31, 2005.  The evidence included the child's testimony that she was abused by Ortiz continuously from when she was four or five years old until she was age eight.  The child was abused both at Ortiz' former residence in Arlington, where he lived until 2005, and thereafter, at his new residence in Maryland.

The child's description of the sexual abuse she endured from Ortiz spanned from 2002 through 2006.  The disputed evidence was not offered merely to show Ortiz' propensity to commit rape during the specific time period charged.  The evidence was relevant for one or more of the following purposes: to show the conduct or attitude of Ortiz toward the child, to prove motive or method of committing the rape, to prove an element of the crime charged, or to negate the possibility of accident or mistake.  See Scott, 228 Va. at 527, 323 S.E.2d at 577; Moore, 222 Va. at 76, 278 S.E.2d at 824.  Moreover, "[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.  The exercise of that discretion will not be disturbed on appeal in the absence of a clear abuse."  Spencer v. Commonwealth, 240 Va. 78, 90, 393 S.E.2d 609, 617 (1990).

Assuming, *arguendo*, that the pornographic material and vaginal cream, neither of which is illegal to possess, do constitute evidence of other crimes or bad acts under these facts, the real issue is whether evidence of Ortiz' possession of these items is relevant to prove the commission of rape during the time period referenced in the amended indictments. "Evidence is relevant if it tends to prove or disprove, or is pertinent to, matters in issue." Clay v. Commonwealth, 262 Va. 253, 257, 546 S.E.2d 728, 730 (2001).

As the child did not reveal the sexual abuse until 2006, the investigation could not commence until that time. Because Ortiz moved to Maryland approximately one year earlier, in 2005, police detectives had to go to his Maryland residence to search for evidence that might corroborate the child's statements.

The child stated to Detective Borelli and again at trial that Ortiz showed her tapes of "grownups doing something" without clothes on and put cream on her private parts. The grandmother, in an interview with Detective Borelli, denied purchasing the vaginal cream. Evidence showed that Ortiz regularly picked the child up after school on Fridays, then took the grandmother to work in Washington, D.C. for her shift beginning at 5 or 6 p.m., after which he was alone with the child for several hours. The drugstore receipt bearing the

name "Ms. Sebastian Ortiz" was dated October 7, 2005, a Friday, at 5:06 p.m., and originated from a Washington, D.C. store. Therefore, the purchase of the vaginal cream occurred during the time period encompassed by the amended indictment. "Circumstantial evidence . . . is offered to prove a fact not directly in issue, from which a fact in issue may reasonably be inferred." Commonwealth v. Hudson, 265 Va. 505, 512, 578 S.E.2d 781, 785 (2003). This circumstantial evidence was sufficient to link Ortiz to the purchase of the vaginal cream and therefore, was corroborative of the child's allegations about Ortiz' use of cream during the commission of rape.

Because the pornographic tapes and vaginal cream corroborated the child's allegations, they were also relevant to negate the possibility of accident or mistake raised by Ortiz. In Ortiz' interview at the police station, he asserted to the detectives that the child might have had sex with him without his knowledge while he was drunk and asleep because he was often drunk on weekends.

The evidence that Ortiz sexually abused the child for a period of time extending less than a year beyond the time frame alleged in the amended indictments was not so remote that it lacked significant probative value. This evidence helped establish the relationship between the parties and the opportunity to commit the crime charged, and it negated the

13

possibility of accident or mistake.  For these reasons, the Court of Appeals did not err in concluding that the trial court did not abuse its discretion by allowing the contested evidence.

Victim's Prior Allegations and the Rape Shield Statute

Ortiz filed a pretrial motion seeking permission pursuant to Code § 18.2-67.7 to introduce evidence of the child's alleged prior sexual conduct with a third person.  Ortiz contended that evidence of the child's prior allegation would show she had a motive to fabricate that led her to change her story from accusing the third person to accusing Ortiz of rape.

The chronology and nature of the allegations made by the child are significant.  The facts of this case began to unfold on March 16, 2006, when the child first disclosed to a forensic interviewer that Victor Manuel Paz-Castillo (Manuel), the live-in boyfriend of the mother, had touched the child's vaginal area.  Upon being interviewed, Manuel admitted to touching the child's vaginal area, but explained he did not do so "in a bad way."  Rather, Manuel claimed he touched the child while roughhousing and while tending to insect bites the child had suffered from a bad dust mite problem in their home.  Manuel was arrested on charges of aggravated sexual battery and incarcerated and thus, was removed from the home.  Approximately one month later, the child reported Ortiz' abuse

14

to her mother.  The next day, April 19, 2006, Detective Borelli interviewed the child and concluded that the sex acts by Ortiz included penetration.  Ortiz was charged with rape and arrested on April 24, 2006.

On June 1, 2006, the date of Ortiz' preliminary hearing on the rape charge, the child told the Commonwealth's Attorney prosecuting the case that her allegations against Manuel were not true.  In a subsequent interview, the child stated that Manuel had, in fact, touched her, just not "in a bad way." Because the child's last version of the events was consistent with Manuel's statement, the Commonwealth nolle prossed the charge against Manuel.

Ortiz argues that the child's motive to fabricate was to appease her mother who was very upset by the child's allegations against Manuel and his resultant arrest and removal from their home.  Thus, Ortiz asserts, the child shifted her allegations from Manuel to Ortiz.

The Court of Appeals agreed with the trial court's determination that Virginia's Rape Shield Statute precluded Ortiz from introducing evidence of the child's prior allegations against Manuel and that she later changed her story to suggest he did not touch her "in a bad way."  The Court of Appeals relied upon our holding in Winfield v. Commonwealth, 225 Va. 211, 301 S.E.2d 15 (1983), that the evidence of the

15

child's past sexual conduct was not admissible under the "motive to fabricate" provisions of Code § 18.2-67.7 (B) because there was not a "sufficient nexus" between the pattern of behavior and the charges against Ortiz.  Id. at 220, 301 S.E.2d at 21.

Code § 18.2-67.7(B) states, in pertinent part:

> Nothing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused.

In Winfield, we held that the General Assembly's enactment of Code § 18.2-67.7 was "intended to preclude evidence of general reputation or opinion of the unchaste character of the complaining witness" in criminal sexual assault cases.  225 Va. at 220, 301 S.E.2d at 20.  Nevertheless, Code § 18.2-67.7 does render admissible evidence of the victim's prior sexual conduct for limited purposes.[1]  Id. at 219, 301 S.E.2d at 20.  One such purpose is to show a victim's motive to fabricate, which Ortiz asserts is applicable in this case.  We disagree.

To be admissible under the "motive to fabricate" exception, the proffered evidence of sexual conduct must show a pattern of behavior by the victim that directly relates to the conduct charged in the case on trial.  Id. at 220, 301 S.E.2d

---

[1] "[P]rior sexual conduct" is defined in Code § 18.2-67.10(5) as "any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial,

16

at 21.  There must be a "sufficient nexus" to render such evidence relevant and probative of a motive to fabricate.  Id. The proffered evidence tended to show that the complaining witness in Winfield had a "distinctive pattern of past sexual conduct" wherein she extorted money by threat after acts of prostitution.  Id. at 220, 301 S.E.2d at 20.

No such nexus exists here.  The child's allegations against Manuel were unlike her allegations against Ortiz.  The child never alleged that Manuel had sexual intercourse with her and eventually explained that while Manuel did touch her vaginal area, he did not do so "in a bad way."  In contrast, the child's allegations against Ortiz exposed in graphic detail repeated acts of sexual intercourse that were painful and unrelated to playful roughhousing or tending to insect bites.

Ortiz contends the mother influenced the child to recant her allegations against Manuel and falsely charge Ortiz so that Manuel would be released and allowed to return home.  This argument ignores the distinctive nature of the sexual abuse claimed.  The evidence does not support Ortiz' argument that the child simply replaced Manuel's name with that of Ortiz. Thus, evidence of the child's allegations against Manuel was

excluding the conduct involved in the offense alleged under this article."

17

not at all probative of a motive to fabricate and was properly excluded under this argument.

Ortiz argues in the alternative that he did not seek to introduce evidence of the child's prior sexual conduct, but sought instead to introduce the child's prior *statements* for impeachment purposes.[2]  In <u>Clinebell v. Commonwealth</u>, 235 Va. 319, 321-22, 368 S.E.2d 263, 264 (1988), the defendant was convicted of rape, sodomy, and inanimate object penetration of his daughter.  Citing Code § 18.2-67.7, the trial court excluded evidence of the daughter's prior statements that she was pregnant, that her father and uncle raped her, that a boy had impregnated her, and that her grandfather sexually abused her.  The defendant sought to introduce this evidence for the limited purpose of attacking the daughter's credibility.  This Court determined that the daughter's pregnancy claims, made when she was 10 and 11 years old, were patently untrue and created a reasonable probability that her claims against her family members were also false.  We held that before a complaining witness's prior accusations are admissible, a court

---

[2] At trial, Ortiz' arguments were based, in part, upon the holding of the Court of Appeals in <u>Clifford v. Commonwealth</u>, 48 Va. App. 499, 633 S.E.2d 178 (2006).  However, after Ortiz' trial had concluded, this Court reversed the judgment in <u>Clifford</u>, holding that the Court of Appeals erred in failing to find that the defendant waived the trial court's alleged error. We directed the Court of Appeals to enter an order affirming the

18

must make the threshold determination that a reasonable probability of falsity exists. Id. at 325, 368 S.E.2d at 266. When determined by the court to be false, statements concerning sexual behavior are not "conduct" within the meaning of Code § 18.2-67.7 and the rape shield statute is inapplicable. Id. at 322, 368 S.E.2d at 264.

Ortiz failed to make the threshold showing that there existed a reasonable probability that the child's allegations against Manuel were false. To the contrary, he argued that the child's allegations were true and that Manuel, not Ortiz, caused her abnormal genital findings revealed by the SANE exam. Because Ortiz did not satisfy the requirements established in Clinebell to remove the child's prior allegations from the protection of the rape shield statute, this evidence was properly deemed inadmissible.

### Victim's Competency to Testify

Ortiz contends the trial court erred in determining the child was competent to testify. After questioning the child, the trial court stated, "this is obviously a very intelligent child, and I think she's competent to testify." The Court of Appeals approved the trial court's ruling that the evidence

---

trial court's judgment. Clifford v. Commonwealth, 274 Va. 23, 26, 645 S.E.2d 295, 297 (2007).

failed to show the child lacked intelligence or a sense of moral and legal responsibility.

Ortiz argues there was clear evidence that the child had been strongly influenced by the mother. Ortiz contends that the child's recantation of the charge against Manuel indicates that she was unable to recollect and communicate events. Ortiz also claims numerous alleged inconsistencies in the interviews with authorities as proof that the child had no consciousness of the duty to speak the truth.

> The competency of a child as a witness to a great extent rests in the sound discretion of the trial judge whose decision will not be disturbed unless the error is manifest. It is the duty of the trial judge to determine such competency after a careful examination of the child. In deciding the question the judge must consider the child's age, his intelligence or lack of intelligence, and his sense of moral and legal responsibility.

Greenway v. Commonwealth, 254 Va. 147, 153, 487 S.E.2d 224, 227 (1997) (quoting Hepler v. Hepler, 195 Va. 611, 619, 79 S.E.2d 652, 657 (1954)). It is the trial judge's duty to determine the competency of a child witness after "a careful examination of the child." Id.

While being questioned by the trial court during a competency hearing, the then nine-year-old child explained the difference between the truth and a lie. She stated that she thought she would get in trouble if she told a lie in court,

20

and that no one had told her what to say on the witness stand. Defense counsel also questioned the child during the hearing, and the child said she did not practice her testimony with her mother, she had never lied to the prosecutor or the detectives, and that it was better to tell the truth than to lie.

After a careful examination, the trial court concluded that the child possessed a "sense of moral responsibility, the mental capacity to observe events that happened and [the] ability to testify about those events, the ability to remember the events, [and] the ability to make intelligen[t] answers vis-à-vis the truth." In finding the child competent to testify, the trial court acknowledged that Ortiz' contentions that the child had been unduly influenced by her mother and had rehearsed her story were matters affecting the weight of her testimony, not her competency as a witness. The trial judge stated that the jury "can weigh the testimony of this child as they do any other witness" and that he would so instruct the jury. Based on this record, we agree with the Court of Appeals that the trial court did not abuse its discretion in allowing the child to testify.

### Amendment of Indictment and Denial of Continuance After Amendment of Indictments

After the conclusion of its case-in-chief and prior to the conclusion of Ortiz' case, the Commonwealth made a motion to

amend the indictments to conform the allegations in the indictments to the evidence presented. The impact of the amendments was to cover an additional period of time from January 1, 2004 to December 31, 2005. In support of the motion, the Commonwealth's Attorney argued,

> [t]he evidence has always been that [the child] said this happened between the time that she was five and the time that she was eight. And now we have corroborating evidence to establish how long [Ortiz] was, in fact, in Arlington County. That's what the allegations are. And that's always been the evidence. And as counsel knows, also, the dates when a child is under the age of 13, that the dates are not an element of the offense. It's not as if there was an alibi defense.

When granting the Commonwealth's motion to amend the indictments to cover, in total, the period from January 1, 2003 to December 31, 2005, the trial court held that "the statute allows you to do it." In response, defense counsel conceded, "I agree, Your Honor, but I also think that some of the cases discuss about the timeliness. So if it's new evidence or extending the evidence, then I should get a little bit of time to prepare to defend that." Defense counsel likewise conceded that

> [the amendment] *doesn't change the charge*, granted. But my preparation for my client's defense was activity in 2003. . . . I would actually move for a continuance so that I can get time to prepare for that. . . . *It doesn't change the charge itself*, but I think my remedy at that

22

point would be that I should at least be given some continuance time.

(Emphasis added).

Pursuant to Code § 19.2-231:

[I]f there shall appear to be any variance between the allegations [in the indictment] and the evidence offered in proof thereof, the court may permit amendment of such indictment . . . at any time before the jury returns a verdict . . . , *provided the amendment does not change the nature or character of the offense charged*.

(Emphasis added).

The concessions by Ortiz' counsel operated as a waiver and therefore, are fatal to his argument that the trial court erroneously granted the amendment to the indictment on which he was found guilty. Ortiz did not contend the amendment changed the nature or character of the offense charged. To the contrary, Ortiz agreed with the trial court that the offense charged remained unchanged and Code § 19.2-231 authorized the amendment of the indictment.

We now address whether the trial court abused its discretion by denying Ortiz' motion for a continuance following amendment to the indictment. Code § 19.2-231 further provides that "if the court finds that such amendment operates as a surprise to the accused, he shall be entitled, upon request, to a continuance of the case for a reasonable time." As noted at

the outset, the standard of review governing this issue is well-settled in Virginia.

> The decision to grant a motion for a continuance is within the sound discretion of the circuit court and must be considered in view of the circumstances unique to each case. The circuit court's ruling on a motion for a continuance will be rejected on appeal only upon a showing of abuse of discretion *and* resulting prejudice to the movant.

Haugen, 274 Va. at 34, 645 S.E.2d at 265. Ortiz has failed to prove that the amendment to the indictment operated as a surprise or that he was prejudiced by the denial of his motion for a continuance.

Ortiz asserts the requisite surprise arose from the expansion of the time frame he had to defend against to encompass January 1, 2004 to December 31, 2005. However, the Commonwealth made its motion to amend the indictment after it had concluded its case-in-chief, and Ortiz was aware of all of the evidence against him. Ortiz already knew he would have to defend against evidence seized from his residence in 2006, including the drugstore receipt dated October 7, 2005, and statements made by the child about what happened to her up to 2006, as this evidence formed the basis of his motion in limine, which was denied by the trial court before the trial commenced. Clearly, the element of surprise was lacking.

24

Ortiz "made no showing of a specific need for additional investigation to prepare . . . a defense."  Mackall, 236 Va. at 249, 372 S.E.2d at 765.  Nor did he "suggest to the trial court that there was testimony of witnesses, or evidence in any other form, which he could secure if a continuance was granted."  Parish v. Commonwealth, 206 Va. 627, 632, 145 S.E.2d 192, 195 (1965).  Ortiz did not assert prejudice with the requisite specificity nor did he ask the trial court to make such a finding under Code § 19.2-231.  Mere reference to a need for more time to prepare is insufficient to show that a continuance was improperly denied.  Thus, we agree with the Court of Appeals that Ortiz was not prejudiced by the trial court's denial of his motion for a continuance.

## Sufficiency of the Evidence

Lastly, Ortiz challenges the sufficiency of the evidence to sustain his conviction.  We will not address this assignment of error, as Ortiz failed to preserve his objection for appellate review.  Ortiz moved to strike the evidence at the conclusion of the Commonwealth's case, but did not renew his motion to strike at the conclusion of all the evidence.  The Court of Appeals held that Ortiz' failure to renew his motion to strike operated as a waiver of his objection to the sufficiency of the evidence under Day v. Commonwealth, 12 Va. App. 1078, 1079, 407 S.E.2d 52, 54 (1991).  Ortiz did not ask

25

the Court of Appeals to invoke the "good cause" exception pursuant to Rule 5A:18.

On appeal to this Court, Ortiz states in his assignment of error that "[t]he Court of Appeals erred by holding that evidence was sufficient to overcome [his] motion to strike the evidence." The Court of Appeals made no such ruling, but rather held that Ortiz' argument regarding the sufficiency of the evidence was procedurally defaulted. Ortiz has not assigned error to the Court of Appeals' default ruling. When an appeal is taken from a judgment of the Court of Appeals, only assignments of error relating to questions presented in, or actions taken by, the Court of Appeals will be considered by this Court. Rule 5:17(c).

Because the Court of Appeals did not reach the merits of Ortiz' argument regarding the sufficiency of the evidence and because Ortiz has not assigned error to the Court of Appeals' failure to do so, Ortiz has waived his objection to the sufficiency of the evidence. We decline to invoke the "good cause" or "ends of justice" exceptions to Rule 5:25, having been provided no reason to do so.

For the reasons stated, we will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>

26