COURT OF APPEALS OF VIRGINIA

Present:   Judges Elder, McClanahan and Haley
Argued by teleconference


JEROME WRIGHT

                                                    MEMORANDUM OPINION* BY
v.        Record No. 2985-08-2                      JUDGE JAMES W. HALEY, JR.
                                                         MARCH 23, 2010
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

        Theodore D. Bruns (Blackburn, Conte, Schilling & Click, PC, on
        brief), for appellant.

        Jennifer C. Williamson, Assistant Attorney General (William C.
        Mims, Attorney General, on brief), for appellee.


I.  INTRODUCTION

Appealing his conviction for second-degree murder, Jerome Wright argues the trial court

erred in permitting the Commonwealth to introduce the testimony of four witnesses that the

victim had told them of threats and threatening actions Wright had made against her.  Wright

maintains the testimony lacked admissibility under the state-of-mind exception to the prohibition

against hearsay and unduly prejudiced his defense.  We affirm.

II.  BACKGROUND

We recite only those facts necessary to the disposition of this appeal.

It is undisputed that on the morning of March 20, 2008, Wright killed his girlfriend, Lora

Barnes, at her house by placing his hands around her neck.  Wright then set the house on fire in

an effort to conceal his deed.  A grand jury indicted Wright for first-degree murder.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Both in a statement given to police and at trial, Wright claimed he did not intend to kill Barnes. In his statement to the police, Wright claimed he and Barnes argued that morning about Wright's status in relation to Barnes' family. The argument became physical, with Barnes hitting Wright and Wright grabbing Barnes' neck. Wright released Barnes when she tried to say she loved him, though she was too weak to pronounce it. After Barnes lost consciousness, Wright briefly left to go to an ATM machine. He initially indicated he realized she had died upon returning. However, Wright later stated to the police he understood Barnes had died immediately. At trial, Wright reiterated the two began to argue because of his status with Barnes' family. When Wright made an insulting comment about Barnes' daughter, Barnes began to strike him. Wright indicated he grabbed her neck to restrain her, did not squeeze tightly, and did not, otherwise, assault her.[1] He, again, stated he released his grip when Barnes said she loved him. Wright testified he realized Barnes had died shortly thereafter.

The Commonwealth filed a pretrial motion seeking the court's permission to admit statements made by Barnes to others to show Barnes' state of mind. The statements were intended to reveal Barnes feared Wright because of threats he had made against her. The Commonwealth maintained this evidence was relevant to show Wright's mental state when committing the crime. Wright objected to the admission of the statements on the grounds that they did not qualify under the state-of-mind exception to the prohibition of hearsay and would unduly prejudice his case.

At a hearing on the motion, the trial court agreed to permit the Commonwealth to introduce most of its evidence. The court made clear it admitted the evidence to show Barnes'

---

[1] An autopsy of Barnes corroborated Wright's story that he did not apply significant pressure to Barnes' neck. The autopsy revealed no injury to the neck. Dr. Bill Gomerly testified Barnes most likely died from stimulation of the carotid sinus, causing her heart to stop. He stated that while the heart will normally re-start after this stimulation, this does not always occur. Adrenaline from a fight could contribute to this risk.

state of mind as relevant to Wright's mental state. At one point, the court stated that the evidence was proper "to show the victim's state of mind, which tends to show the intent that's necessary for the proof that the Commonwealth must have." At another point, the court indicated the evidence was "going to show that she feared him because of these statements, which goes to his intent at the time of these crimes, which is an element of proof."

A bench trial was held on August 5, 2008. At the beginning of the proceedings, the court remarked it would admit the disputed evidence "to show the victim's state of mind only as it relates to the intent of the defendant." The court made similar pronouncements when Wright objected as the testimony came into evidence. For instance, the court stated it would not "accept them for the truth at all, only for the state of mind of the victim as it is relevant to the intent of the defendant in this matter." Later, the court, again, noted over Wright's objection that the testimony would be "admitted only for the state of mind of the victim as it is relevant to the intent of the defendant."

The first witness to testify concerning Barnes' state of mind was Barnes' daughter, Dashar Shabazz. She testified that on November 26, 2007, she received a phone call from Barnes. Barnes related she was afraid of Wright because he had held a knife to her and threatened to burn her house. Barnes again told Shabazz that Wright had threatened her before Christmas 2007. After Christmas, Barnes informed Shabazz that Wright had awoken her at night, at which time, she discovered paper towels around her. Wright held a grill lighter and asked Barnes "which way she wanted to go," at which point Barnes began "yelling and screaming and praying." In early 2008, Barnes called Shabazz but did not speak in the phone. Shabazz heard Wright say in the background: "How about I heard the devil tell me to kill you."[2]

_____

[2] The trial court held this statement did not constitute hearsay since Shabazz heard Wright say it.

Shabazz also related Barnes had told her that Wright "would call her constantly, threatening her." Finally, Shabazz testified Barnes stated she did not want to have a relationship with Wright, but did not know how to leave him.

The next witness was Barnes' sister, Christy Hamlin. She testified that in February 2008, Barnes told her regarding Wright that "the next time he's going to kill her."

Lisa Carter, a co-worker of Barnes, also testified about threats Barnes told came from Wright. She stated that in late 2007, Barnes informed her that when she came home from work one night and found Wright there, an argument ensued. Barnes told Wright she did not have time to argue because she had to resume work in the morning. In response, Wright held a grill lighter in front of her face and told her "she wouldn't make it to work." The day before her death, Barnes told Carter that Wright had said "he was going to hurt everybody that meant anything to her."

The final witness to testify about Barnes' state of mind was another co-worker of Barnes, Donna Massey. Massey stated Barnes told her in February 2008 that Wright had said he would kill Barnes and burn her house. Massey related Barnes told her that same month that Wright had placed tissues around her in her bed and told her that "he was going to burn her up." When Massey advised Barnes in March 2008 to leave Wright, Barnes stated that if she did not speak with Wright he would come near her more often, so she would try to make him think their relationship was healthy so he would stay away.

In making its findings of fact at the conclusion of the case, the court again commented on the significance of the statements admitted to show Barnes' state of mind as relevant to Wright's state of mind. The court stated:

> And we know from the evidence both how the victim
> perceived the relationship, that it was a bad relationship at times.
> And we know from the evidence, and that's also corroborated by
> the defendant's own testimony that it was an off and on

relationship. There were bad relationships, bad periods of time during their relationship.

Again, as I've said a number of times, and the only consideration I give to statements made by the victim were to show what the relationship was as it is relevant in this case. And the only conclusion one could reach from that is that there was in her mind a bad relationship and I think that is corroborated by the defendant.

Now, you got that going in. You know by direct evidence, even, and the defendant even admits it today, but the evidence before that was during this relationship, he had threatened to kill her. You have other direct evidence that there had been statements of that type made throughout the relationship.

So with that as a background, you look at what the evidence showed happened this day. So you know you've got these people in a bad relationship where during the term of the relationship the defendant in the past has threatened to kill her. You know that on this particular day, he is mad because of what he says has gone on. And then, you know, it's nothing to say that an argument did not, did not occur between the two of them, or certainly nothing that says that didn't happen.

The court found Wright guilty of the lesser-included offense of second-degree murder.[3]

Wright now appeals.

## III.  ANALYSIS

Wright argues the testimony of statements made by Barnes to others did not meet the requirements of the state-of-mind exception.[4] He also maintains the prejudice resulting from this evidence outweighed any probative value. We address these arguments in turn.

Under the state-of-mind exception to the hearsay rule, statements of a crime victim showing the victim's state of mind are admissible if they have "relevance to a material issue in the case." Hodges v. Commonwealth, 272 Va. 418, 436, 634 S.E.2d 680, 690 (2006).

---

[3] Wright had asked the court to find him guilty of involuntary manslaughter.

[4] Wright does not dispute the existence of a state-of-mind exception, which is well established.

- 5 -

"Relevance exists when the evidence has a logical tendency, however slight, to prove a fact at issue in a case." Id. at 436-37, 634 S.E.2d at 690 (internal quotation marks omitted).

Evidence of a crime victim's state of mind may provide relevant evidence concerning a defendant's state of mind. Elliot v. Commonwealth, 30 Va. App. 430, 437, 517 S.E.2d 271, 275 (1999). Such evidence may include "previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant." Hanson v. Commonwealth, 14 Va. App. 173, 189, 416 S.E.2d 14, 23 (1992) (internal quotation marks omitted).

Our Supreme Court evaluated the state-of-mind exception under facts relevant to this case in Clay v. Commonwealth, 262 Va. 253, 546 S.E.2d 728 (2001). Like this case, the defendant faced a first-degree murder charge. Id. at 257, 546 S.E.2d at 730. "Therefore, the Commonwealth had the burden of proving . . . that the killing was willful, deliberate, and premeditated." Id. The defendant admitted killing his wife with a gun, but claimed it was an accident. Id. The Commonwealth admitted the testimony of two persons that in the months preceding the killing, the defendant's wife "had told them that she planned to move because she was afraid of what [the defendant] might do to her." Id. In finding the testimony properly admitted, the Court noted the defendant "placed his intent at issue" by claiming the killing was an accident. Id. at 258, 546 S.E.2d at 730. The Court held the wife's fear of the defendant, coupled with other testimony the defendant had threatened to kill his wife, "was relevant and probative to a material issue in the case; i.e., whether the killing was willful and deliberate." Id.

In Elliot, this Court held testimony a murder victim had stated the defendant had threatened to kill her admissible under the state-of-mind exception. 30 Va. App. at 438, 517 S.E.2d at 275. The defendant admitted shooting his girlfriend, but claimed it was an accident.

Id. at 434-35, 517 S.E.2d at 273. We held the defendant's threats as related by the victim "relevant to prove the state of mind of the accused." Id. at 438, 517 S.E.2d at 275.

Applying these principles, we conclude the testimony concerning Wright's threats against Barnes as related by Barnes to others was admissible under the state-of-mind exception. The Commonwealth charged Wright with first-degree murder, thereby requiring it to prove a deliberate, premeditated killing. Wright admitted killing Barnes by grabbing her neck, but claimed he did not intend to apply lethal force. Thus, Wright's intent represented the critical question in the trial. The testimony of the Commonwealth's four witnesses concerning the threats Barnes stated Wright made against her had relevance to show Wright's state of mind regarding the killing. The evidence revealed Wright often contemplated violence against Barnes. This could then serve as evidence of Wright's state of mind at the time of the killing. See Hodges, 272 Va. at 443, 634 S.E.2d at 694.

Wright also maintains the trial court should have excluded the testimony because its prejudicial impact outweighed its probative value.

The duty of considering whether to exclude evidence because its prejudicial effect outweighs its probative value rests in the prudence of the trial court, and we will only reverse it upon a clear abuse of discretion. Ortiz v. Commonwealth, 276 Va. 705, 715, 667 S.E.2d 751, 757-58 (2008). In a bench trial such as this one, concerns of the prejudicial effect of evidence impacting the decision of the fact finder are significantly reduced. Addressing this issue in the context of an objection to a hearsay statement, our Supreme Court held:

> The court below in this bench trial expressly refused to consider that part of the utterance for its truth . . . . A judge, unlike a juror, is uniquely suited by training, experience and judicial discipline to disregard potentially prejudicial comments and to separate, during the mental process of adjudication, the admissible from the inadmissible, even though he has heard both.

Eckhart v. Commonwealth, 222 Va. 213, 216, 279 S.E.2d 155, 157 (1981).

We find no abuse of discretion in this case.[5]  The disputed evidence was properly admissible under the state-of-mind exception as probative of Wright's mental state.  The trial court admitted it only for this purpose and repeatedly cautioned to that extent.  The trial court had the legal expertise to confine its consideration of the evidence to a limited purpose.

Yet Wright claims the trial court's findings of fact shows it did not, in fact, limit its consideration of the testimony to the state-of-mind exception.  Wright maintains the trial court contemplated the otherwise hearsay statements for the truth they expressed and that this reveals the statements caused undue prejudice.

Wright misinterprets the trial court's findings.  In fact, the trial court, again, stated at the end of the case that it only considered the disputed evidence under the state-of-mind exception: "Again, as I've said a number of times, and the only consideration I give to statements made by the victim were to show what the relationship was as it is relevant in this case."  The trial court's other statements in its factual findings concerning the defendant's threats against Barnes are properly viewed as referring to the defendant's state of mind that could be inferred from those threats.

For the foregoing reasons, the judgment of the trial court is affirmed.

<u>Affirmed.</u>

---

[5] Wright relies heavily upon the analysis of prejudice contained in <u>Evans-Smith v. Commonwealth</u>, 5 Va. App. 188, 361 S.E.2d 436 (1987).  We find that case distinguishable. Most importantly, it involved a jury, whereas here there was a judge not susceptible to ordinary weaknesses.  Furthermore, we noted the otherwise hearsay statements involved "opinions and conclusory statements" "with no factual support in the record."  <u>Id.</u> at 199, 361 S.E.2d at 442. By contrast, this case involved specific instances of threats by Wright as related by Barnes. These threats were corroborated by Barnes' daughter, Dashar Shabazz, who heard Wright threaten to kill Barnes.