COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, O'Brien and Athey
Argued at Fredericksburg, Virginia


RICARDO GIRON CHAVEZ

MEMORANDUM OPINION[*] BY
v.       Record No. 0793-22-4           JUDGE MARY GRACE O'BRIEN
JULY 11, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LOUDOUN COUNTY
James P. Fisher, Judge

Kelsey Bulger, Senior Appellate Attorney (Virginia Indigent Defense
Commission, on briefs), for appellant.

Aaron J. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General; Liam A. Curry, Assistant Attorney General, on
brief), for appellee.


Tried by a jury, Ricardo Giron Chavez appeals his convictions for rape and sodomy of a

child under the age of thirteen, in violation of Code §§ 18.2-61 and 18.2-67.1.  Chavez contends the

court erred by failing to strike a juror for cause and by excluding evidence of a motive to fabricate.

Chavez also argues that the evidence was insufficient to establish the element of penetration.  For

the following reasons, we affirm Chavez's convictions.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

BACKGROUND[1]

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (en banc) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (en banc) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

## A. Voir Dire of the Jury

At the start of voir dire, the court asked the prospective jurors several questions. Their responses indicated that they were unbiased, had no personal interest in the trial, did not have any information about the alleged offenses, and had no reason to believe that they could not be fair and impartial.

The prosecutor inquired whether anyone had religious, moral, or philosophical beliefs which would prevent them from serving on the jury. No one responded. Chavez's counsel also examined the prospective jurors. Their responses indicated that they could follow the court's instructions independent of their beliefs. The prospective jurors also affirmed that they knew Chavez was presumed innocent and understood that the Commonwealth was required to prove Chavez's guilt beyond a reasonable doubt. The prosecutor advised that the case involved the sexual abuse of a child and asked if anyone had "been the victim of sexual abuse" or "had a close

---

[1] The record in this case is sealed, but this appeal requires unsealing certain portions to resolve the issues raised by Chavez. "To the extent that certain facts are found in the sealed portions of the record, we unseal those portions only as to those specific facts mentioned in this opinion." *Khine v. Commonwealth*, 75 Va. App. 435, 442 n.1 (2022). "The rest remains sealed." *Id.*

friend or family member who has been the victim of sexual abuse." A.P.[2] responded affirmatively.

During a bench conference, A.P. stated that his wife was sexually abused as a child. A.P. added that he had "feelings about . . . the impact it has had on [his wife] growing up." He asserted that he thought he could "be unbiased, [he] just ha[d] some doubt." However, he did acknowledge that "something" in the case could "trigger" a response from him related to his wife's abuse. The prosecutor asked if A.P. had already determined Chavez's guilt because of his own experience, and A.P. responded "no." When asked if he could determine the case based on the evidence presented and not on his own experience, A.P. stated, "I think I can."

Chavez moved to strike A.P. for cause. In denying the motion, the court noted that it observed A.P.'s body language, his facial gestures, and his vocal intonation. It "heard [A.P.] very persuasively say he can commit to following the law and the evidence in this case." The court recognized that A.P.'s statement, "I think I can, I think I can," would not appear "great on paper." The court concluded, however, it had observed A.P. and believed him when he said he could be impartial.

### B. Evidence at Trial

The evidence established that in 2018, when A.G. was "12 or 11" years old, she lived with her two siblings, their mother (Sonia), and Chavez. Sonia was in a romantic relationship with Chavez.

On February 5, 2019, A.G.'s fifth-grade teacher learned from A.G.'s classmate that A.G. may have been sexually abused. The teacher informed the school administration, and after investigating the matter, administrators contacted Child Protective Services (CPS) and law enforcement.

---

[2] We use the juror's initials to protect his privacy.

A CPS investigator advised Loudoun County Detective Elissa Wilk that a 12-year-old student had disclosed to a classmate that she had been sexually abused. After speaking with Sonia, Detective Wilk set up a recorded telephone call from A.G. to Chavez. A.G. used Sonia's phone, and Detective Wilks watched as she called Chavez.

In the call, A.G. falsely told Chavez that she was pregnant. Chavez immediately began to cry and demanded to know A.G.'s location. When A.G. asked why he had sex with her, Chavez stated, "at that point you insisted so much." He continued that "it shouldn't have been that way." Chavez acknowledged that A.G's pregnancy was "a great big problem" but claimed that "[he] told [her] no." He contended that she could not "be like that. . . . It's not possible." When A.G. stated that she was afraid, he responded "I know" and again wanted to know A.G.'s location. Chavez asked A.G. where her mother was and whether her mother knew that she was pregnant. Instead of responding to Chavez's questions, she asked Chavez why he got her pregnant. He repeated "[t]hat shouldn't have happened" and "that was a mistake." Chavez expressed concern that A.G. was mistaken and urged her to save the pregnancy test to show him later. When A.G. requested an abortion, Chavez agreed. He stated that they would have "a great big problem" if her mother discovered that A.G. was pregnant. Throughout the conversation, Chavez called himself "stupid" and reiterated that A.G.'s pregnancy was "an error, an act of stupidity, an idiocy."

Chavez was arrested and charged with rape and sodomy of a child under the age of thirteen. At trial, A.G. testified that Chavez's sexual advances began when he and her mother were separated in 2018. Chavez visited one evening while Sonia was at work. A.G. and Chavez were sitting together on the couch when Chavez stated that he was going to go to sleep. He asked A.G. if she "want[ed] to [go] with [him] and, like, sleep." Chavez then rubbed his clothed private parts against her body. A.G. explained that she was clothed at the time.

The second incident of sexual abuse occurred when Sonia was at work and Chavez was visiting. A.G. and Chavez were on Sonia's bed watching television. Chavez touched A.G.'s buttocks and private parts and ultimately, they "did sex." A.G. explained that "[Chavez's] private part[s] [were] in mine." When asked what a doctor would call a man's "private parts," A.G. responded "penes," or penis, in Spanish. When asked what a doctor would call her "private parts," A.G. responded, "vagina," which she described as being "[u]nder [her] belly." When asked where Chavez's penis went on this occasion, A.G. stated "[u]nder my vagina," and then amended her answer to state that Chavez's penis went "[i]n my vagina."

A.G. described a third incident involving oral sodomy. While her mother was at work, A.G. and Chavez were in her mother's bedroom. After they had sexual intercourse, Chavez put his penis into A.G.'s mouth. A.G. testified that "white stuff" came out of his penis and into her mouth. Chavez asked A.G. if she wanted "that stuff" to go "in her vagina or in her mouth."

A.G. first disclosed the abuse to a friend at school, E.Z. E.Z. stated that A.G. sometimes used the word "rape" when describing Chavez's actions. A.G. said that she and Chavez would play "the doctor game" where Chavez would touch different parts of A.G.'s body and A.G. would touch different parts of Chavez's body. E.Z. relayed the information to another student because she was concerned about A.G. Eventually, A.G.'s teacher learned about the abuse.

Sonia testified for the defense. She stated that A.G. did not confide in her and preferred to speak about private matters with non-family members. According to Sonia, A.G. accused her great-uncle of inappropriately touching her in 2016, but later recanted. Sonia estimated that in 2019, her daughter was lying to her 80% of the time.

Chavez testified and denied sexually abusing A.G. He stated that he "had issues with A.G. and her actions" and he believed that she was in love with him. He admitted that he received a call from A.G. in February 2019, but explained that when he answered the call, he had just worked 10 to

12 hours. Chavez claimed that he was shocked and confused to learn of A.G.'s claim that she was pregnant but noted that his reaction was only as a father figure to the child.

On cross-examination, Chavez testified that the children in the home called him "papa" and he thought of himself as the children's father with the authority to care for and discipline them. He admitted that during the controlled call he did not deny having sex with A.G., he never asked A.G. if she had sexual intercourse with anyone else, and did not deny that he could have fathered the purported child.

ANALYSIS

A. Evidentiary Rulings

Before trial, appellant moved to introduce evidence to support his theory that A.G. had a motive to fabricate the allegations and requested a hearing pursuant to Code § 18.2-67.7, the rape shield statute. Chavez sought to cross-examine A.G. about statements that she allegedly made to others suggesting a belief that she was pregnant as a result of a liaison with a purported boyfriend. Chavez intended to establish that A.G. had a boyfriend to support an inference that A.G. was sexually active with someone other than the accused and feared her mother's disapproval. After a hearing, the court denied the motion and concluded "there was insufficient notice provided with respect to the information sought to be admitted." The court also found "an insufficient nexus between the allegations of the victim against the defendant and the prior sexual conduct evidence of the victim sought to be [introduced]" at trial.

At Chavez's subsequent motion to reconsider, heard during the trial, he proffered that he intended to introduce the following evidence:

(a) A.G.'s statements that she self-harmed in the past with a knife because her mother would not let her have a boyfriend;

(b) A.G.'s statements that she believed she was pregnant;

(c) Statements from A.G.'s classmate, E.Z., that A.G. discussed a boyfriend, Gabriel, in the same conversation during which she reported Chavez's abuse; and

(d) Printouts of two photographs from A.G.'s Facebook account, posted during the period of abuse, showing an unknown couple kissing with "heart balloons" in the background and an unknown couple on a beach with the quote "I was born to love you."

The court ruled that A.G.'s belief that she was pregnant was inadmissible under Code § 18.2-67.7.  The court also ruled that, although Code § 18.2-67.7 did not bar A.G.'s statement about harming herself or having a boyfriend, that evidence, along with A.G.'s Facebook posts, was irrelevant and inadmissible.

On appeal, Chavez argues that the proffered evidence was relevant to show that A.G. feared her mother's reaction to an unwanted pregnancy with an unnamed boyfriend.  A.G.'s purported fear, Chavez claims, established her motive to fabricate the source of the pregnancy.

This Court reviews a trial court's decision to admit evidence under an abuse of discretion standard.  *Morgan v. Commonwealth*, 73 Va. App. 512, 522 (2021) ("Decisions as to the admissibility of evidence lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion." (citation omitted)); *see also Ortiz v. Commonwealth*, 276 Va. 705, 712 (2008) (applying the abuse of discretion standard to a court's denial of evidence proffered pursuant to Code § 18.2-67.7).

### 1.  A.G.'s Belief of Pregnancy

Turning first to Chavez's proffered evidence of A.G.'s statement that she was pregnant, Chavez contends that this evidence was admissible under the motive to fabricate exception in

Code § 18.2-67.7(B).[3] He claims that A.G.'s statement that she believed she was pregnant coupled with her fear of her mother's discipline evinced a motive to fabricate the source of the pregnancy.

In rape prosecutions, "general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted." Code § 18.2-67.7(A). However, Code § 18.2-67.7(B) provides that "[n]othing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused."

In *Winfield v. Commonwealth*, 225 Va. 211, 220 (1983), the Virginia Supreme Court concluded that Code § 18.2-67.7 was enacted to "preclude evidence of general reputation or opinion of the unchaste character of the complaining witness" in sexual assault cases. For evidence of past sexual conduct to be admissible under Code § 18.2-67.7(B)'s motive to fabricate exception, the evidence "must show a pattern of behavior which directly relates to the conduct charged against the complaining witness in the case on trial." *Id.* Accordingly, the proffered evidence must bear a "sufficient nexus" to the crime alleged. *Id.*; *see also Ortiz*, 276 Va. at 718.

The proffered evidence in *Winfield* tended to show that the complaining witness had a "distinctive pattern of past sexual conduct, involving the extortion of money by threat after acts of prostitution." 225 Va. at 220. Thus, because there was "a sufficient nexus" between the complaining witness's alleged extortion after acts of prostitution and Winfield's version of the complaining witness's conduct in his case, the evidence was relevant and probative of a motive to fabricate. *Id.*

---

[3] Chavez also argues that Code § 18.2-67.7 does not apply because A.G.'s statement that she believed she was pregnant is not "prior sexual conduct" under the statute. However, he did not make this argument to the trial court and, therefore, he did not preserve it. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling.").

Here, Chavez did not establish a pattern of behavior with a sufficient nexus to the crime for which he was on trial. He did not proffer the details of the statements, any claimed prior sexual activity, or the existence of a boyfriend. Accordingly, the court did not abuse its discretion when it denied Chavez's motion to introduce A.G.'s statement suggesting a belief that she was pregnant.

### 2. Other proffered evidence

Chavez argues that the court erred by ruling that the other proffered evidence he sought to introduce was irrelevant. He asserts that it tended to prove that A.G. had a motive to fabricate the source of an unwanted pregnancy.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence." Va. R. Evid. 2:401. "Evidence that is not relevant is not admissible." Va. R. Evid. 2:402(a).

Chavez tried to introduce statements that A.G. claimed to have harmed herself in the past because her mother would not let her have a boyfriend and sought to introduce testimony that A.G. mentioned having a boyfriend to E.Z. First, Chavez failed to establish how A.G.'s alleged self-harm tended to prove a motive to fabricate. Second, the bare fact of A.G. mentioning a boyfriend is too attenuated from any evidence supporting a motive to fabricate. To arrive at such a conclusion would require several speculative inferential leaps unsupported by any evidence. Thus, the court did not abuse its discretion when it found that this evidence was irrelevant and invited speculation. *See Coe v. Commonwealth*, 231 Va. 83, 87 (1986) ("[E]vidence of collateral facts and facts incapable of supporting an inference on the issue presented are irrelevant and cannot be accepted in evidence.").

Finally, the record also supports the court's conclusion that the photographs from A.G.'s Facebook page were irrelevant to prove any issue in the case and merely invited speculation. These images simply portray an unknown couple. They did not make the existence of a potential

boyfriend more probable and produced only an attenuated, speculative inference. The court did not abuse its discretion in excluding them. *See Farish v. Commonwealth*, 2 Va. App. 627, 629 (1986).

## B. Jury Selection

Chavez asserts that the court erred in refusing to strike A.P. from the jury because although A.P. stated that he thought he could be impartial, he maintained that "[he] ha[d] some doubt." A.P. also expressed that he was unsure "if something would trigger related to what [his wife] went through."

Chavez argues that A.P. was never rehabilitated, noting that A.P. was asked only a single rehabilitative question: whether he could judge the case on the evidence, instead of his personal experiences. A.P. responded, "I think I can." A.P.'s answer, Chavez argues, failed to rebut his prior statements about doubting his own impartiality. Chavez contends that A.P. was equivocal about his impartiality and should have been struck for cause.

"The right to be tried by an impartial jury is guaranteed under both the United States and Virginia Constitutions." *Taylor v. Commonwealth*, 61 Va. App. 13, 22 (2012); *see also* Code § 8.01-358. "For that guarantee to be effective, persons accused of violating criminal laws must be provided with 'an impartial jury drawn from a panel . . . free from exceptions.'" *Taylor*, 61 Va. App. at 22 (quoting *Breeden v. Commonwealth*, 217 Va. 297, 300 (1976)). "Every prospective juror must stand indifferent to the cause, 'and any reasonable doubt as to a juror's qualifications must be resolved in favor of the accused.'" *Id.* at 23 (quoting *Breeden*, 217 Va. at 298). "These principles must be strictly applied, and when a prospective juror equivocates about whether he or she has formed a fixed opinion, the prospective juror should be stricken by the trial court." *Id.* "The opinion entertained by a juror, which disqualifies him, is an opinion of that fixed character which repels the presumption of innocence in a criminal case, and in whose mind

- 10 -

the accused stands condemned already." *Id.* (quoting *Lovos-Rivas v. Commonwealth*, 58 Va. App. 55, 61 (2011)). "Thus, the test of impartiality is whether the venireperson can lay aside the preconceived views and render a verdict based solely on the law and evidence presented at trial." *Id.* (quoting *Lovos-Rivas*, 58 Va. App. at 61).

Because the trial court can observe each juror's response to voir dire questions, it "is in a superior position to determine whether a prospective juror's responses during *voir dire* indicate that the juror would be prevented from or impaired in performing the duties of a juror as required by the court's instructions and the juror's oath." *Id.* (quoting *Lovos-Rivas*, 58 Va. App. at 61). "Juror impartiality is a question of fact, and a trial court's decision to seat a juror is entitled to great deference on appeal. Accordingly, the decision to retain or exclude a prospective juror will not be disturbed on appeal unless there has been manifest error amounting to an abuse of discretion." *Id.* at 23-24 (quoting *Lovos-Rivas*, 58 Va. App. at 61). In conducting our review on appeal, "we consider the juror's entire *voir dire*, not merely isolated statements." *Id.* at 24.

Here, the record does not establish that A.P. held firm opinions of such "fixed character which repel[] the presumption of innocence in a criminal case, and in whose mind the accused stands condemned already." *Justus v. Commonwealth*, 220 Va. 971, 976 (1980) (quoting *Slade v. Commonwealth*, 155 Va. 1099, 1106 (1931)). Although he recognized that some evidence could affect him personally, A.P. affirmed that he believed he could "commit to determining [Chavez's guilt] based on the evidence that was presented" and had not prejudged Chavez's guilt. The court found that A.P was honest about his ability to be impartial and specifically noted that it came to this conclusion based on A.P.'s body language, facial gestures, and vocal intonation. Considering the entire voir dire, the record supports the court's determination that A.P. could serve as an impartial juror. We will not reverse that conclusion on appeal.

C.  Evidence of Penetration

Finally, Chavez asserts that the evidence was insufficient to prove the element of penetration.

"Rape is defined as 'sexual intercourse against the victim's will by force, threat, or intimidation.'" *Johnson v. Commonwealth*, 259 Va. 654, 681 (2000) (quoting *Wilson v. Commonwealth*, 249 Va. 95, 100 (1995)); *see also* Code § 18.2-61.  "Penetration by a penis of a vagina is an essential element of the crime of rape; proof of penetration, however slight the entry may be, is sufficient."  *Johnson*, 259 Va. at 682 (quoting *Moore v. Commonwealth*, 254 Va. 184, 186 (1997)).

Chavez argues that A.G. was equivocal when describing sexual organs and notes that no doll, diagram, or other piece of demonstrative evidence was used to aid A.G. in her testimony.  He contends that A.G.'s use of imprecise terms to describe what happened to her left the evidence in the prosecution's case-in-chief in a state of equipoise.  Chavez notes that A.G. testified that she and Chavez "did sex."  When AG was asked to describe where her private parts were located, she stated "under her belly."  Finally, A.G. stated that Chavez's penis went "under her vagina" and "in her vagina."  He maintains her testimony was insufficient to prove penetration beyond a reasonable doubt.  We disagree.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)).  "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)).  "Rather, the relevant question is whether '*any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

In *Moore v. Commonwealth*, the complaining witness stated that the defendant placed his penis both "in" and "on" her vagina. 254 Va. at 189. The Supreme Court held that because the victim gave two different accounts of the essential facts relating to a crucial element of the crime and the victim's testimony stood alone, the evidence "was in a state of equipoise." *Id.* at 189-91. However, when the prosecution presents "additional evidence of penetration, which was uncontradicted within its case-in-chief," the evidence is not in equipoise. *Jett v. Commonwealth*, 29 Va. App. 190, 196-97 (1999) (holding that "[t]he combination of direct and indirect evidence of penetration presented here is distinguishable from the equivocal testimony of the child victim in *Moore*, which was the sole evidence of penetration in that case").

Unlike in *Moore*, A.G.'s account illustrated that she understood her anatomy. Further, her account of the crime was corroborated by Chavez's inculpatory statements. A.G. testified that she and Chavez had sex in her mother's bedroom more than once. A.G. explained that sex with appellant involved "[h]is private part in my [sic] mine." When asked what Chavez's private part was called, A.G. responded penis, in Spanish. A.G. testified that "one time" Chavez's penis went into her mouth and "the other time" it went in her "private parts." When asked what a doctor would call her private part, she replied: "a vagina." When asked where Chavez's penis went, she responded "[i]n my vagina." She noted that her vagina was located "[u]nder her belly."

Chavez also made several admissions during the controlled call. When A.G. asked Chavez why he had sex with her, he replied "that . . . it shouldn't have been that way." He told A.G. that getting her pregnant "was a mistake," and he agreed that she should abort the baby. Throughout the conversation, Chavez called himself "so stupid," stated that he was "very afraid," and expressed that he regretted his actions "very, very much." At one point, Chavez referred to his behavior as "an error, an act of stupidity, an idiocy."

Considering A.G.'s testimony with Chavez's inculpatory statements, the evidence was not in equipoise. A finder of fact could conclude beyond a reasonable doubt that penetration occurred and that Chavez was guilty of rape. *See Jett*, 29 Va. App. at 197.

CONCLUSION

We find that the court did not abuse its discretion when it denied Chavez's motion to introduce certain proffered testimony and exhibits, and when it denied Chavez's motion to strike A.P. from the jury for cause. Further, the Commonwealth's evidence was competent and was sufficient to prove beyond a reasonable doubt that Chavez was guilty of rape of a child under the age of thirteen. Accordingly, we affirm.

*Affirmed.*