COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges AtLee, Friedman and Raphael
Argued at Lexington, Virginia


DA'MARCUS SHARRAY ENGLISH

MEMORANDUM OPINION* BY
v.      Record No. 1065-21-3           JUDGE FRANK K. FRIEDMAN
                                        NOVEMBER 1, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
David B. Carson, Judge

(Chelesea Vaughan; Magee Goldstein Lasky & Sayers, on brief), for
appellant. Appellant submitting on brief.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, Da'Marcus Sharray English ("appellant") was convicted of rape of a

child under the age of thirteen, and forcible sodomy of a child under the age of thirteen, both of

which involved a prior qualifying offense in violation of Code §§ 18.2-61, 18.2-67.1, and

18.2-67.5:3. He was also convicted of aggravated sexual battery of a child under the age of thirteen,

after having been convicted of a prior qualifying offense, in violation of Code §§ 18.2-67.3 and

18.2-67.5:2; object sexual penetration of a child under the age of thirteen, after having been

convicted of a prior qualifying offense, in violation of Code §§ 18.2-67.2 and 18.2-67.5:3; and

taking indecent liberties, after having been convicted of a prior qualifying offense, in violation of

Code §§ 18.2-370 and 18.2-67.5:2. The offense dates for all charges were between November 1,

2013, and October 7, 2016. Appellant received three life sentences plus thirty years to serve. On

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

appeal, he challenges the sufficiency of the evidence supporting his convictions as well as certain evidentiary and discovery rulings. For the following reasons, we affirm the circuit court's judgment.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). Appellant and Brown were in a romantic relationship. In 2008, appellant moved in with Brown and her three children, the oldest of whom was five-year-old O.B., the victim of his convictions on appeal.[1] Initially, Brown, her children, and appellant lived in Mountain View Terrace Apartments, but moved to Peters Creek Apartments when O.B. was six years old.

Appellant cared for the children while Brown was at work. O.B. testified that she and appellant often engaged in horseplay, but while they were living at Peters Creek Apartments, the horseplay became sexual. O.B. recalled an incident at Peters Creek Apartments when appellant climbed on top of her as she lay on her back in bed, spread her legs open, and "humped" her by moving his pelvis back and forth on top of her vagina. Afterward, appellant told O.B. not to tell her mother what had happened.

Over time, the sexual nature of appellant's behavior toward O.B. escalated. O.B. recalled that appellant "caress[ed]" her buttocks when they were alone in the bedroom. On one occasion at the Peters Creek apartment, O.B. expressed anxiety about pulling a loose tooth, and appellant told her he could "make her feel better." As O.B. lay on appellant's bed, he removed her pants and underwear, and he performed oral sex for several minutes. Afterward, he accompanied O.B. to the bathroom, and she extracted her tooth.

---

[1] O.B. was born in October 2003.

<u>The Relevant Time Frame for the Underlying Charges</u>

On November 1, 2013, shortly after O.B. turned ten, the family moved to a house on Franwill Avenue. November 1, 2013, is the beginning date for the indictments against appellant for the underlying charges. O.B. testified that the sexual abuse continued after the move. O.B. recalled English removing her clothes to rub her breasts, buttocks, thighs, and vagina. He also put his mouth on her breasts and vagina and performed oral sex on her. Initially, he rubbed his erect penis against her vagina and attempted to penetrate her. O.B. stated that appellant engaged in "constant play fight[s]" with her, followed by attempted sexual intercourse. She described it as "a daily thing" that occurred "primarily" in her mother's bedroom.

O.B. stated she cried out in pain when appellant attempted to have sex with her. She also recalled an occasion where he grabbed her face, pushed his penis into her mouth, and instructed her how to perform oral sex. O.B. testified that appellant first had sexual intercourse with her when she stayed home from school due to sickness. She stated that appellant entered her bedroom, sat down on the bed next to her, and began fondling her. When O.B. attempted to crawl away on her hands and knees, appellant pulled her shorts to the side and had sex with her. O.B. stated that appellant ejaculated on the floor.

After that, appellant engaged in vaginal and oral sex with O.B. "almost daily," ejaculating on the comforter and laundering it afterward. O.B. stated that these incidents occurred before her first menstrual period when she was ten years old.[2] O.B. stated that she was frightened when she had her period because she feared she was bleeding from having had sexual intercourse with appellant. Appellant began tracking O.B.'s period on his cell phone calendar. He warned O.B. not to disclose their sexual activities to her mother.

---

[2] O.B.'s mother testified that O.B. had her first period in May of 2014 when O.B. was ten years old. Although O.B. also stated that she was ten years old when she had her first period, she calculated that she was ten years old in May of 2013.

O.B. began taking birth control pills to manage her periods. She testified that after she was on birth control, appellant began ejaculating inside her during sexual intercourse. On occasion, however, appellant punched O.B. in the abdomen after sex as an additional precaution against pregnancy.

Appellant and Brown frequently argued over the course of their relationship, and appellant would leave for a brief time before reconciling with Brown. In February of 2017, however, Brown learned that appellant was having a baby with another woman. Despite that discovery, Brown and appellant continued to live together from February 2017 through October 2017. When the other woman gave birth on October 4, 2017, English moved out of Brown's home. After he moved, he continued to visit O.B. two or three times a week and have sex with her while Brown was not home.

O.B. Discloses the Abuse

On May 16, 2018, O.B. disclosed appellant's sexual abuse to her younger sister at school. The police were notified, and a few days later, O.B. provided a statement at the Child Advocacy Center. On May 23, 2018, a nurse, Melissa Harper, examined O.B. The night before the examination, Harper spoke with Brown by phone. Brown told Harper that O.B. had disclosed having oral sex and sexual intercourse with appellant. O.B. told her mother that appellant "began touching her when she was in third grade and having sex with her in the fifth grade."

Harper testified that when she first met with O.B., O.B. was very upset, with tear drops rolling down her face, and admitted to previous suicidal ideations. O.B. told Harper that English had "'sex' with her 'daily since sixth or seventh grade.'" During the examination, O.B. asked

- 4 -

her mother whether she remembered the sheets were always in the washer and dryer, and explained the abuse had happened "every time."[3]

Physical Evidence of Abuse

Harper testified that the physical examination revealed O.B. had suffered a significant tear in her vaginal tissue called a hymenal transection. Harper opined that the tear was consistent with blunt force trauma and would never heal completely. She also discovered that O.B. had genital warts.

At trial, Dr. William Pearlman testified as an expert in family medicine. He explained that appellant was treated for genital warts at the health department in 2013 and 2014. Appellant first visited the health department on April 9, 2013, reporting that he had contracted "HPV," or human papillomavirus. Dr. Pearlman testified that genital warts are a symptom of HPV. Although appellant returned to the health department on June 4, 2013, for further treatment, the condition did not clear. In March of 2014, he visited Dr. Pearlman twice for genital wart treatment. Dr. Pearlman opined that "common warts" would not likely be transmitted from a patient's hands to his genitals. He stressed that, after the age of five, genital warts were "typically" transmitted through sexual contact. Although Dr. Pearlman agreed that not all strains of HPV were transmitted through sexual activity, he emphasized that "direct sexual contact" was necessary "to acquire" "the stereotype [strain] that causes genital warts." Nevertheless, he

---

[3] At trial, O.B. agreed she spoke with police officers at the Child Advocacy Center. She agreed she told both the officers and Harper that appellant began having sex with her in sixth or seventh grade. When questioned further about that report versus her testimony that it began when she was ten years old, O.B. emphasized that no one asked about the timing in relation to her starting her menstrual period and that she provided only a brief explanation of the abuse at the hospital. She explained she had to figure out when the abuse happened by connecting her age to life events and memories of the abuse. She also emphasized that she was young, only fourteen, when she came forward about what happened, and it was hard for her.

conceded that the specific genital warts on one person could not be linked to those on another person through testing.

<u>Appellant is Convicted of all Charges</u>

English testified on his own behalf and stated that he had been sexually abused as a child. However, he denied that he had committed the charged offenses. Appellant wholly denied that he had "inappropriately put [his] hands [on O.B.]" or had sexual intercourse with her. Further, appellant denied being sexually aroused by young girls, though he acknowledged he had a felony juvenile adjudication for sodomy arising out of an incident where he received oral sex from an eight-year-old girl when he was fifteen.

At the conclusion of the evidence, the jury convicted appellant of all charges. This appeal followed.

ANALYSIS

A. *Sufficiency of the Evidence*

Appellant's first eight assignments of error challenge the sufficiency of the evidence in support of his convictions. In each assignment, appellant contends that "[t]he trial court erred by convicting" him of the offenses. Appellant was convicted by a jury, and the record does not indicate any motion to set aside the jury verdict was filed with the circuit court challenging the jury's conviction. *See Wagoner v. Commonwealth*, 63 Va. App. 229, 243 (2014) (discussing the standard in reviewing a motion to set aside a jury verdict and explaining "[t]he trial judge's power to set aside a verdict 'can only be exercised where the verdict is plainly wrong or without credible evidence to support it'" (quoting *Doherty v. Aleck*, 273 Va. 421, 424 (2007))). The court pronounced the defendant guilty "in accordance with the verdicts of the jury." The trial court denied appellant's motion to strike, and we interpret these assignments as a challenge to the circuit court's denial of his motion to strike at the conclusion of trial. *See Avent v.*

*Commonwealth*, 279 Va. 175, 198-99 (2010) (motion to strike should be granted if it is conclusively apparent no cause of action has been proven against defendant).

1. Evidence to Support Finding the Victim Under Thirteen Years Old
   (Assignments of Error 1 through 5)

Appellant contends that the evidence was insufficient to support any of his five convictions because it failed to prove that O.B. was under the age of thirteen when the offenses occurred.[4] Appellant acknowledges that O.B. would have been under thirteen between November 1, 2013, and October 7, 2016, the date range in the indictments. However, appellant rests this argument on her initial reports made to officers that indicated she was in sixth or seventh grade when the abuse began. O.B. turned thirteen in seventh grade, and English asserts that O.B. did not provide specific dates, or even "time of year," for the sexual abuse she testified about at trial, other than it occurred before her menstrual cycle at age ten.

As English acknowledges, there is evidence that O.B. was sexually abused before she began menstruation at age ten. However, contrary to English's assertion, there is also evidence that the abuse continued throughout the period of time alleged in the indictments. During trial, O.B. recalled specific details about the location and circumstances surrounding appellant's sexual abuse. She recalled the abuse beginning at age eight; she remembered him removing her clothes and "licking" her vagina when she was still losing "baby" teeth at Peters Creek Apartments. Evidence at trial from O.B., Brown, and Harper, established that the abuse began before O.B.'s menstruation at age ten. Based on O.B.'s testimony and Brown's testimony, the family moved to the Franwill house on November 1, 2013, shortly after O.B. turned ten in October 2013. The indictments date range begins from the date of this move, shortly after O.B. turned ten. O.B. testified that appellant's

---

[4] Appellant argues that the evidence was insufficient to convict him on all five of his charges because the Commonwealth did not prove O.B. was under thirteen; however, the indecent liberties charge only required proof that the victim was younger than fifteen.

sexual abuse escalated during this time and that he began to attempt to engage in sexual intercourse with her. When he was unsuccessful, he had O.B. perform oral sex on him. O.B. also had a specific memory that appellant first engaged in sexual intercourse with her while she was out of school for sickness and that the intercourse occurred before she had her first period in May of 2014. O.B. agreed during her trial testimony that the abuse "continued to progress" as she matured. She testified that it happened "every day." O.B. agreed that the "sexual intercourse, the oral sex, [and] all of those things happen[ed] up until he left [the home]." English continued to visit her for intercourse, when Brown was not home, after he moved out in October of 2017—just a few days before O.B.'s fourteenth birthday.

There was sufficient evidence to find that O.B. was under the age of thirteen at the time of the offenses. Although O.B.'s testimony did not require corroboration to be credible, jurors could have reasonably inferred that the significant tearing in her vaginal tissue, characterized as consistent with trauma, corroborated O.B.'s recollection that she had not achieved puberty when appellant began having sex with her. *See Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005) ("[A] conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim.").

English's challenge to the sufficiency of the evidence on the age element of his convictions incorporates a challenge to O.B.'s credibility. On brief, English explains "[t]he differences between [O.B.'s] prior statements indicating that she was in the 'sixth or seventh' grade and only when she takes the stand at trial stating that she was 10 years old, which would put her in the fifth grade, is significant." Assuming without deciding that the issue of credibility is preserved for this appeal, English's argument fails.[5]

---

[5] After the conclusion of evidence, English moved to strike all five charges against him; the circuit court asked whether a reasonable articulation of English's argument was "the testimony is not credible and as such the court should grant the motions as a matter of law," and appellant

- 8 -

As an initial matter, O.B. was twelve years old in sixth grade. Thus, O.B.'s initial report of the abuse—which English contests—is consistent with the indictments. Moreover, the evidence against English was substantial, and it does not plainly appear that the trial court would have been compelled to set aside any verdict against English as being without evidence to support it.

"A motion to strike challenges whether the evidence is sufficient to submit the case to the jury." *Lawlor v. Commonwealth*, 285 Va. 187, 223 (2013). "A circuit court must rule on a motion to strike based on the presumption that the jury will believe all the evidence favorable to the [Commonwealth], as well as all reasonable inferences that a jury might draw therefrom in favor of the [Commonwealth]." *Dill v. Kroger Ltd. Partnership I*, 300 Va. 99, 109 (2021). "When evaluating a motion to strike, the circuit court must not judge the weight or credibility of evidence, because to do so 'would invade the province of the jury.'" *Id.* (quoting *Tahboub v. Thiagarajah*, 298 Va. 366, 371 (2020)). "We review the trial court's ruling denying the motion to strike in accordance with well-settled principles:

> When the sufficiency of [the Commonwealth's] evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in the [Commonwealth's] favor and should grant the motion only when it is conclusively apparent that [the Commonwealth] has proven no cause of action against defendant, or when it plainly appears that the trial court would be compelled to set aside any verdict found for the [Commonwealth] as being without evidence to support it.

*Avent*, 279 Va. at 198-99 (alterations in original) (citing *Banks v. Mario Indus.*, 274 Va. 438, 454-55 (2007)). We find no error in the trial court's denial of the motion to strike.

answered, "[n]o, Your Honor, because I think the credibility of the witness is for the jurors so it would be improper argument but I do think that this may be in the records, Your Honor, as it relates to it." Thus, appellant conceded that O.B.'s testimony was not incredible as a matter of law. On appeal, English has not challenged the jury's credibility findings.

## 2. Proof of Marriage (Assignments of Error 7 and 8)

Appellant next contends that the evidence was insufficient to support his indecent liberties conviction and his object sexual penetration conviction because it failed to establish that he and O.B. were not married.[6]

In addressing the motion, the circuit court was required to presume the jury would believe all reasonable inferences in favor of the Commonwealth. *Dill*, 300 Va. at 109. Here, the record established that O.B. was much younger than fourteen years old at the time of the offenses and was living with her mother; it was reasonable for the jury to infer that O.B. would not have been able to marry English without parental consent.[7] The evidence showed that appellant was in a relationship with O.B.'s mother and that he acted as a "caretaker" for O.B. and her siblings. O.B. testified that appellant was a "father figure" to her. O.B.'s mother testified that she was in a relationship with appellant for over nine years and that he moved in with her when O.B. was five years old. Brown also described appellant's relationship with O.B. as that of a "care giver" or "[p]retty much like a stepfather." Appellant himself testified that O.B. referred to him as "Poppy," that O.B. wanted him to adopt her, and that he told her adoption would only be possible if he and Brown were to marry.

---

[6] Although the lack of a marital relationship is not an element of indecent liberties or object sexual penetration charges, the indictments for both offenses included the absence of such a relationship as an element. Where the indictment includes narrowing language, it must prove the offense as charged in the indictment. *Purvy v. Commonwealth*, 59 Va. App. 260, 267-69 (2011).

Additionally, the instructions submitted to the jury included it as an element of the indecent liberties and sexual penetration offenses. Instructions become the law of the case when they are not objected to. *See Hamilton v. Commonwealth*, 69 Va. App. 176, 195 (2018) (citing *Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd.*, 237 Va. 649, 652 (1989) ("It is well settled that instructions given without objection become the law of the case and thereby bind the parties in the trial court and this Court on review.")). Here, English challenged the instructions as a whole on the ground that all the matters should have been decided as a matter of law but made no other specific objection relevant to this appeal.

[7] Such an inference would be consistent with the law; a minor under the age of eighteen cannot legally marry unless she has been emancipated. Code § 20-48.

He also stated that, when Brown disciplined O.B., he "tried to give them mother and daughter space . . . [b]y me just being the stepfather or the boyfriend or whatever." O.B. was only fourteen years old at the time she reported the abuse, and English had moved out because he was having a child with another woman. The other woman, Kori, testified on behalf of English; she explained she had been in an "on and off" relationship with English for fifteen years, and at the time of the trial he was her boyfriend. Based on the evidence a juror could reasonably infer that appellant was not married to O.B. at the time of the offenses. We conclude there is no error in the circuit court's denial of the motion to strike.

### 3. Lascivious Intent (Assignment of Error 6)

Appellant contends that the evidence was insufficient to support his indecent liberties conviction because it failed to prove lascivious intent. In support of this argument, he cites his testimony denying that he touched O.B. "inappropriately" and claiming his preference for adult sexual partners. Appellant suggests that O.B.'s testimony that he rubbed his penis against her vagina is not credible because it was not sufficiently specific and was uncorroborated. Appellant asks us to reweigh the credibility of the testimony and evidence. In reviewing the circuit court's decision to deny the motion to strike, we do not reweigh the credibility of the testimony and evidence. *Dill*, 300 Va. at 109. In fact, the circuit court must presume the jury will believe the evidence favorable to the Commonwealth. *Id.*

"Intent, like any element of a crime, may, and usually must, be proved by circumstantial evidence such as a person's conduct and statements. The statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent." *Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011). "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion [of guilt].'"

*Rams v. Commonwealth*, 70 Va. App. 12, 37 (2019) (quoting *Stamper v. Commonwealth*, 220 Va. 260, 273 (1979)). Corroboration is not required to prove intent. *Wilson*, 46 Va. App. at 87.

Code § 18.2-370(A)(1) provides, in pertinent part, that any adult who "with lascivious intent, knowingly and intentionally" exposes his "sexual or genital parts" to a child, or "propose[s] that [the] child expose . . . her sexual or genital parts" is guilty of taking indecent liberties. Further, subsection (A)(3) of Code § 18.2-370 states in relevant part that a defendant is guilty of taking indecent liberties if, with the same intent, he "[p]ropose[s] that any such child feel or fondle his own sexual or genital parts . . . or propose[s] that [he] feel or fondle the sexual or genital parts of any such child." The term "lascivious" describes "a state of mind that is eager for sexual indulgence, desirous of inciting to lust or of inciting sexual desire and appetite." *Dietz v. Commonwealth*, 294 Va. 123, 136 (2017) (quoting *Viney v. Commonwealth*, 269 Va. 296, 299 (2005)). Evidence that a defendant was sexually aroused, or asked the child to do something wrong, supports a finding that he possessed lascivious intent. *Viney*, 269 Va. at 300. Here, O.B. testified that appellant rubbed his bare, erect penis directly against her vagina and then attempted to penetrate her vagina. She also testified that he forced her to perform oral sex on him, performed oral sex on her, rubbed her in several areas of her body, and ultimately raped her. That evidence at trial demonstrated that appellant was sexually aroused and supported a finding that he acted with lascivious intent. The circuit court did not err in denying a motion to strike on this issue.

### B. Evidentiary Rulings (Assignments of Error 9-11, 13-15)

Appellant contends that the court erred by admitting evidence of his prior sodomy conviction, evidence that he suffered from genital warts, and evidence regarding his alleged prior bad acts outside the indictment dates. He also asserts that the court erred by "overruling his objection to provide an alibi," excluding evidence of a Child Protective Services safety plan, and ruling that he could not testify about "concerns" relating to O.B. viewing pornography.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "This standard, if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'" *Turner v. Commonwealth*, 65 Va. App. 312, 327 (2015) (citing *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "A trial court . . . 'by definition abuses its discretion when it makes an error of law.'" *Robinson v. Commonwealth*, 68 Va. App. 602, 606 (2018) (quoting *Dean v. Commonwealth*, 61 Va. App. 209, 213 (2012)). Thus, "evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" *Abney v. Commonwealth*, 51 Va. App. 337, 345 (2008) (quoting *Michels*, 47 Va. App. at 465).

1. Prior Sodomy Conviction (Assignment of Error 9)

Before trial, appellant filed a motion *in limine* seeking to exclude evidence of his adjudication of delinquency for the forcible sodomy of an eight year old when he was fifteen years old. After the court denied appellant's motion, the Commonwealth introduced the conviction at the outset of trial. Appellant argues on appeal that the trial court erred by admitting evidence of his prior sodomy conviction. A defendant must be given the maximum term authorized for some sexual crimes, including indecent liberties and aggravated sexual battery, if he has a similar qualifying prior offense. Code § 18.2-67.5:2. Appellant does not dispute that he has a prior qualifying offense, rather, he argues that evidence of the prior offense should not have been presented to the jury.

In a proceeding against a defendant under a recidivist statute, evidence of the prior offense is admissible, even when it goes only toward a sentencing enhancement. *Washington v. Commonwealth*, 272 Va. 449, 459 (2006) ("This Court has repeatedly held that prior convictions of a criminal defendant facing trial as a recidivist may be introduced and proved at the guilt phase of the trial on the principal offense."); *see also Elem v. Commonwealth*, 55 Va. App. 55, 58 (2009) ("When the legislature enacted and amended [the code section describing a separate sentencing proceeding following a felony conviction], it was well aware of the appellate decisions concerning the manner of proof of the prior convictions for recidivist offenses, but it chose not to create a separate bifurcated procedure of the guilt phase for these offenses.").

Any "potential prejudice . . . aris[ing] from the introduction of [a defendant's] prior convictions [during the guilt phase] . . . can be . . . solved by an appropriate limiting instruction to the jury." *Elem*, 55 Va. App. at 58. The jury here received three limiting instructions regarding the purpose for which appellant's prior conviction could be considered; the jury was instructed not to consider it as evidence of guilt. One of the instructions specifically cautioned the jury that appellant's prior conviction for "a similar offense is not proof that he sexually abused [O.B.]" and could "not be considered . . . in determining whether [he] sexually abused [O.B.]." *See Couture v. Commonwealth*, 51 Va. App. 239, 247 (2008) ("[W]e presume juries follow the instructions of the trial court." (citing *Muhammad v. Commonwealth*, 269 Va. 451, 524 (2005)).

The trial court did not err by denying appellant's motion *in limine* and admitting his prior sodomy adjudication.

## 2. Genital Warts (Assignment of Error 10)

Appellant asserts that the court erred by admitting evidence that he was treated for genital warts. Although he acknowledges that O.B.'s forensic examination on May 23, 2018, revealed that she, too, had a genital wart condition, appellant maintains that evidence regarding his ailment was irrelevant due to the number of years between their respective diagnoses and the lack of evidence conclusively establishing that O.B. contracted the condition from him. He further argues evidence of his genital warts was unduly prejudicial, confusing, and misleading because it prompted the jury to speculate that he and O.B. had engaged in sexual activity.

"Evidence is admissible if it is both relevant and material." *Castillo v. Commonwealth*, 70 Va. App. 394, 462 (2019) (quoting *Patterson v. Commonwealth*, 62 Va. App. 488, 493 (2013)). It "is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case [and] . . . material if it relates to a matter properly at issue in the case." *Id.* (quoting *Cousins v. Commonwealth*, 56 Va. App. 257, 271 (2010)); *see also* Va. R. Evid. 2:401 (defining relevant evidence as "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence"). "While generally '[a]ll relevant evidence is admissible,' Va. R. Evid. 2:402, '[r]elevant evidence may be excluded if . . . the probative value of the evidence is *substantially outweighed* by . . . the danger of unfair prejudice.'" Va. R. Evid. 2:403(a)(i)." *Commonwealth v. Proffitt*, 292 Va. 626, 635 (2016). "It is well-settled that '[t]he responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court.'" *Id.* (citing *Ortiz v. Commonwealth*, 276 Va. 705, 715 (2008)).

"All probative direct evidence generally has a prejudicial effect to the opposing party . . . [t]hus the relevant question is 'whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects.'" *Id.* (citing *Lee v. Spoden*, 290 Va. 235,

251-52 (2015)).  See *State v. Anwar S.*, 61 A.3d 1129, 1142 (Conn. App. Ct. 2013) (stating that the evidence pertaining to chlamydia was not unduly prejudicial in part because it was "probative of the fact that" the victim "had the type of sexual contact with an individual necessary to transmit the infection").

At the pre-trial hearing on appellant's motion, the circuit court specifically inquired about the "nexus" between English's genital warts and O.B.'s diagnosis of the same.  The Commonwealth proffered that appellant was diagnosed and treated for genital warts in 2013 and in 2014 and that the evidence at trial would prove he was sexually abusing O.B. before, during, and after that time frame.  The Commonwealth also proffered that, when O.B. first disclosed the abuse in May 2018, her forensic examination revealed the presence of genital warts.  The Commonwealth acknowledged that there was a lengthy gap between English's last known treatment for warts and O.B.'s initial diagnosis and that no expert could say it was definitively English that gave O.B. genital warts.  However, it argued that evidence of English's warts was relevant because O.B. was a child and the time frame of English's documented outbreak coincided with when the intercourse abuse began.  The circuit court ultimately denied the motion to exclude such evidence on the basis that the objection went more towards weight than admissibility.

At trial, Dr. Pearlman testified that genital warts are "typically" transmitted through sexual contact.  He acknowledged that genital warts can be transmitted to children from parents assisting with wiping, bathing, diaper changes, or that "kind of stuff," but after the age of five it's typically transmitted sexually.  Dr. Pearlman testified that there are 170 strains of HPV, but "direct sexual contact" was necessary to spread the strain of HPV commonly associated with genital warts.  His testimony, in conjunction with O.B.'s, established that English began having sexual intercourse with O.B. in the same time frame in which he had outbreaks of genital warts.  O.B. was not diagnosed with genital warts until 2018, after she reported the abuse and was examined.

The circuit court weighed the evidentiary issue and necessarily concluded that evidence of English's warts was relevant and its probative value was not substantially outweighed by the danger of unfair prejudice. We afford a high degree of deference to a circuit court's evidentiary rulings and find that reasonable jurists could agree with the circuit court's ruling given the specific factual issues in this case. *See Anwar S.*, 61 A.3d at 1141 (affirming the trial court's refusal to strike evidence of chlamydia in the child victim of sexual abuse even where there was no direct evidence linking the defendant's chlamydia to the victim's); *Daniel v. State*, 536 So. 2d 1319, 1326 (Miss. 1988) (appellant's venereal disease is relevant and corroborative); *see also Turner*, 65 Va. App. at 327 (stating a trial judge's "ruling will not be reversed simply because an appellate court disagrees" (quoting *Thomas*, 44 Va. App. at 753)). The circuit court did not abuse its discretion by admitting evidence of appellant's treatments prior to O.B.'s diagnosis and allowing the jury to determine the weight of that evidence.

### 3. Prior Bad Acts (Assignment of Error 11)

Appellant contends that the court erred by admitting evidence of alleged bad acts by him toward O.B. prior to the time frame alleged in the indictments, *i.e.*, prior to November 1, 2013. Specifically, he asserts that the court erred by admitting evidence of his sexual acts with O.B. such as "alleged play fighting, humping, and oral sex." He contends that, because these acts were not the basis of criminal charges, their prejudicial impact exceeded their probative value. We disagree.

"As a general rule, evidence which shows or tends to show that the accused is guilty of other crimes and offenses at other times, even though they are of the same nature as the one charged in the indictment, is not admissible to show the accused's commission of the particular crime charged." *Kenner v. Commonwealth*, 299 Va. 414, 424 (2021) (quoting *Ortiz*, 276 Va. at 714). "The policy underlying the exclusion of such evidence protects the accused against unfair

prejudice resulting from the consideration of [other] criminal conduct in determining guilt." *Sutphin v. Commonwealth*, 1 Va. App. 241, 245 (1985).

Nevertheless, "numerous exceptions to this rule authorize the admission of 'bad acts' evidence." *Kenner*, 299 Va. at 424 (quoting *Ortiz*, 276 Va. at 714). Evidence of other crimes may be admitted for several legitimate purposes, including to "negate[] the possibility of accident or mistake" or to "show[] motive, method, intent, plan or scheme, or any other relevant element of the offense on trial." *Id.*; *see also* Va. R. Evid. 2:404(b).[8]

Proof of other crimes "is admissible 'if it tends to prove any relevant element of the offense charged' or if 'the evidence is connected with or leads up to the offense for which the accused is on trial.'" *Woodfin v. Commonwealth*, 236 Va. 89, 95 (1988) (quoting *Kirkpatrick v. Commonwealth*, 211 Va. 269, 272 (1970)). "Every fact, however remote or insignificant, that tends to establish a probability or improbability (e.g., appellant's defense of lack of knowledge) of a fact in issue is admissible." *Ferrell v. Commonwealth*, 11 Va. App. 380, 388 (1990). Further, "[e]vidence that falls into the enumerated exceptions must meet an additional requirement: its legitimate probative value must exceed its incidental prejudice to the defendant." *Kenner*, 299 Va. at 424 (quoting *Ortiz*, 276 Va. at 715); *see also* Va. R. Evid. 2:404(b) (requiring that "the legitimate probative value of such proof outweigh[] its incidental prejudice"). Whether the probative value is greater than the prejudicial effect of the evidence "rests in the sound discretion of the trial court." *Kenner*, 299 Va. at 424.

"Moreover, the list of acceptable uses found in Rule of Evidence 2:404(b) is not exclusive." *Lambert v. Commonwealth*, 70 Va. App. 740, 750 (2019). For example, "Proof of

---

[8] Virginia Rule of Evidence 2:404(b) states in pertinent part that evidence of other crimes or bad acts "is admissible if it tends to prove any relevant fact pertaining to the offense charged, such as where it is relevant to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, accident, or if they are part of a common scheme or plan."

- 18 -

other criminal acts is . . . admissible to show that the defendant's conduct was intentional."

*Brown v. Commonwealth*, 226 Va. 56, 61 (1983).

To prove that appellant was guilty of taking indecent liberties with O.B., the Commonwealth was required to establish that he acted with "lascivious intent." Code § 18.2-370(A). His other sexual misconduct was "relevant to establishing . . . [that he acted with] 'lascivious intent' and that [his] acts were accomplished 'knowingly and intentionally.'" *Kenner*, 299 Va. at 426. Here, at the pre-trial hearing on the Commonwealth's motion to admit evidence of appellant's prior sexual conduct with O.B. at the Peters Creek apartment, the court ruled that it was "relevant under 2:404 (B) [to establish] the absence of a mistake or an accident." The duration and escalation of appellant's sexual contact with O.B. before the move to the Franwill house on November 1, 2013, provided the jury with some evidence of appellant's state of mind and intent when he committed the offenses after the move. *See Scott v. Commonwealth*, 228 Va. 519, 524 (1984) (fact finder may consider the "surrounding facts and circumstances" before, during, and after the offense in ascertaining intent). Accordingly, the court did not abuse its discretion by admitting the evidence.

### 4. Child Protective Services Safety Plan (Assignment of Error 14)

Appellant asserts that the court erred by excluding proposed Defense Exhibit 1,[9] a Child Protective Services safety plan for O.B. prepared by the Department of Social Services for the City of Roanoke on July 10, 2018. He contends that the safety plan "mirrored the testimony of [O.B.]'s mother and was relevant to show the level of [her] control [over O.B.] . . . that influenced [O.B.]."

---

[9] The safety plan was not admitted and is in the record under seal. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues appellant has raised. Evidence and factual findings below that are necessary to address the assignment of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

In short, English wanted to suggest that O.B.'s testimony was influenced by her mother—who was angry with English for leaving her.

Appellant maintains that the references to Brown's corporal punishment of O.B. were relevant to O.B.'s "motive . . . to be untruthful." When the safety plan was prepared in 2018, O.B. was a teenager. Nothing in it suggested that the caution about corporal punishment related to O.B. Nor did the plan suggest that O.B.'s disclosure of appellant's sexual abuse coincided with O.B. having been punished by Brown in any form. Based on the record, we conclude that any alleged error involved in the exclusion of the proposed exhibit was harmless.

"An appellate court reviews a decision to admit or exclude evidence where no federal constitutional issue was raised under the standard for non-constitutional harmless error provided in Code § 8.01-678." *Haas v. Commonwealth*, 299 Va. 465, 467 (2021). Code § 8.01-678 provides in pertinent part:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any . . . defect, imperfection, or omission in the record, or for any other error committed on the trial.

Virginia courts "have applied Code § 8.01-678 in criminal as well as civil cases." *Clay v. Commonwealth*, 262 Va. 253, 259 (2001). Under this standard, we "consider the potential effect of the excluded evidence in light of all the evidence that was presented to the jury." *Haas*, 299 Va. at 467 (quoting *Proffitt*, 292 Va. at 642); *see also Montgomery v. Commonwealth*, 56 Va. App. 695, 704 (2010) (assessing the potential error "in the context of the entire case"). If the alleged error did not "substantially influence[] the jury," an error is harmless if "there has been a fair trial on the merits and . . . substantial justice has been reached[.]" *Haas,* 299 Va. at 467. In assessing whether a potential error is harmless, we consider factors such as "(1) the importance of the tainted evidence in the prosecutor's case, (2) whether that evidence was cumulative, (3) whether there is evidence

- 20 -

that corroborates or contradicts the tainted evidence on material points, and (4) the strength of the prosecution's case as a whole." *Angel v. Commonwealth*, 281 Va. 248, 264 (2011).

Assuming without deciding that the safety plan was otherwise relevant, admission of the safety plan was cumulative. Appellant cross-examined Brown about its contents, and as he acknowledges on appeal, its contents "mirrored" Brown's testimony. English specifically asked Brown whether a safety plan was prepared in July 2018 that outlined "appropriate discipline" of her children by her and advised her not to discipline her children in such a manner that they would be left with "marks and bruises." Brown agreed that the plan directed her to use an open hand on her children's buttocks. The jury also watched Defense Exhibit 4, a short video depicting Brown yelling; English suggested in closing argument that the video demonstrated that Brown was verbally and physically abusive to her children.

Thus, we conclude that even if the safety plan were relevant and admissible, any error in the court's decision to exclude the exhibit was harmless because the exhibit was cumulative and because it contained no information that would have substantially influenced the jury's verdict. Accordingly, the court did not commit reversible error by excluding the exhibit.

### 5. Victim and Pornography (Assignment of Error 15)

Appellant contends that the court erred by sustaining the Commonwealth's objection to a question by his attorney "regarding concerns about [O.B.']s viewing of pornography." Specifically, during trial defense counsel asked English whether he approached Brown "concerned about porn?" The Commonwealth objected based on Code § 18.2-67.7, the "Rape Shield" statute, which prohibits discussion of prior sexual conduct without notice. *Fahringer v. Commonwealth*, 70 Va. App. 208, 215 (2019) (This code section is referred to as Virginia's "Rape Shield Law." (citing *Neeley v. Commonwealth*, 17 Va. App. 349, 353-54 (1993))). English responded that the viewing of pornography is not sexual conduct under the statute, and the purpose of questioning O.B. about it

- 21 -

was to negate the Commonwealth's expert's testimony that a fourteen year old old should not have known what "dry humping" was. The question raised by this assignment is whether viewing pornography is sexual conduct protected by the "Rape Shield" statute.

Code § 18.2-67.7(A) provides, in pertinent part, that "[i]n prosecutions under this article, . . . general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted." "The purpose of Virginia's Rape Shield Law is to "exclude evidence in sexual assault cases of the 'general reputation . . . of the complaining witness's unchaste character or prior sexual conduct.'" *Fahringer*, 70 Va. App. at 215 (citing *League v. Commonwealth*, 9 Va. App. 199, 206 (1989)). This Court has found that not all sexual activity is protected as sexual conduct under the rape shield statute. *See Brown v. Commonwealth*, 29 Va. App. 199, 216 (1999) (finding the defendant's questioning went to the victim's prior testimony from a substantially similar rape prosecution, not her "conduct," and so it should have been admitted). Appellant argues that the purpose of asking about O.B.'s porn use was not to demonstrate her sexual proclivity, but rather to explain her sexual knowledge and familiarity with terms like "dry humping."

Notably, English did not examine O.B. about what pornographic material she may have viewed; instead, the objection arose on the last day of trial—after O.B. had testified—when English was attempting to testify about going to Brown "concerned about porn." English proffered that his evidence would have shown O.B. was "looking up pornography." *See Basham v. Commonwealth*, 455 S.W.3d 415, 418-19 (Ky. 2014) (finding that, although the child victim's exposure to porn was likely not protected from admission by statute, evidence of exposure was not admissible because the defendant's proffer did "not demonstrate that [the child] was previously exposed to the sort of sexual acts that she described in her allegations").

Presumably, English wanted to use this evidence to suggest that O.B.'s knowledge of sexual terms came from pornography rather than from abuse. English, however, did not proffer any details about the specific content of the pornography O.B. may have viewed and did not establish whether it depicted "dry humping." He did not proffer any information explaining whether O.B. would have learned the terminology for the acts she was watching simply by viewing them. As the proponent of the evidence, English had the burden to lay a foundation for its admissibility and establish its relevance. *Creamer v. Commonwealth*, 64 Va. App. 185, 194-95 (2015) (establishing the proponent of the evidence must make the substance of the evidence known to the court by proffer to provide the trial court an opportunity to resolve the issue, and to create a record for review on appeal). The trial court did not abuse its discretion in excluding the evidence under these circumstances.[10]

   *C. Bill of Particulars* (Assignment of Error 12) *and Alibi* (Assignment of Error 13)

The indictment alleged English committed these acts of sexual abuse "Between November 1, 2013 and October 7, 2016." English asked for a bill of particulars to state the "dates, locations, and times of all offenses for which [he was] being charged." The circuit court granted the motion and ordered the Commonwealth "to provide more information regarding the time, location, and dates of the alleged offense." A bill of particulars was subsequently

---

[10] Assuming without deciding that viewing pornography is not sexual conduct protected by the rape shield statute, even if English's testimony about O.B. using porn were otherwise admissible, it would have been, at most, harmless error for the circuit court to exclude evidence of O.B.'s exposure to pornography. In assessing whether a potential error is harmless, we consider factors such as (1) the importance of the tainted evidence, (2) whether that evidence was cumulative, (3) whether there is evidence that corroborates or contradicts the tainted evidence on material points, and (4) the strength of the prosecution's evidence as a whole. *Angel*, 281 Va. at 264. O.B.'s familiarity with pornographic material was cumulative and corroborated; the fact that she was exposed to pornography had already been established and was tangential to the case. The prosecution's case against English was strong.

submitted, which the defendant objected to for lack of specificity, as it lacked the "the location, time, and the date" of the offenses alleged in the indictments.

At the hearing on appellant's objection, the Commonwealth stated that it had used best efforts to provide appellant with more specific information and had narrowed the location of the offenses. The Commonwealth emphasized that the offenses were not isolated and that, because the offenses were committed against a child, it was unable to provide any more specific information. Appellant also objected to the requirement in the pre-trial order requiring him to disclose an alibi defense to the Commonwealth under Rule 3A:11(d)(2). Appellant asserted that the time frame of the offenses provided in the Commonwealth's bill of particulars was so broad that it "d[id] not trigger reciprocal discovery by the defendant" and to require him to "provide notice of everywhere that he could possibly be during that five-year span" would violate his due process rights.

The court directed appellant to use "best efforts" to identify time periods when "he was out of town . . . on a permanent basis, [and] . . . rough estimates as to when those time periods were and where he was." The court emphasized that it would "not get hung up on specificity as the court did not get hung up on specificity with respect to the bill of particulars." Therefore, the court "granted" the objection in part and denied it in part. Following this ruling, appellant did not present any alibi defense.

On appeal, English now asserts that "[t]he trial [c]ourt erred by granting in part and denying in part [his] motion for a [b]ill of [p]articulars." He contends that the court erred by failing to require the Commonwealth to "narrow" the scope of the charges to more specific dates. Appellant maintains that the nearly three-year time frame of the charges, from November 1, 2013, to October 7, 2016, and the lack of evidence presented before and during trial regarding specific dates were "insufficient to apprise [him] of the nature and cause of the accusations." In

the same vein, he also assigns error to the circuit court in "overruling his objection to provide an alibi."

"Whether to require the Commonwealth to file a bill of particulars is a matter that falls within the sound discretion of the trial court." *Walker v. Commonwealth*, 258 Va. 54, 63 (1999). On appeal of the denial of a request for a bill of particulars, we review the court's ruling for abuse of discretion. *Rams*, 70 Va. App. at 41. "[W]here the indictment 'give[s] the accused notice of the nature and character of the offense charged so he can make his defense[,] a bill of particulars is not required.'" *Id.* at 42 (quoting *Strickler v. Commonwealth*, 241 Va. 482, 490 (1991)). This Court and the Supreme Court have held that "it is 'improper' for a defendant to use a bill of particulars 'to expand the scope of discovery in a criminal case.'" *Id.* (quoting *Quesinberry v. Commonwealth*, 241 Va. 364, 372 (1991)).

Code § 19.2-220 "requires that an indictment name the accused, describe the offense charged, identify the location of the alleged commission, and designate a date for the offense," but it also states that the indictment needs only to include "so much of the common law or statutory definition of the offense as is sufficient to advise what offense is charged." *Id.* at 41. Thus, "[a]s long as an indictment sufficiently recites the elements of the offense, the Commonwealth is not required to include all evidence upon which it plans to rely to prove a particular offense." *Id.* at 42 (quoting *Sims v. Commonwealth*, 28 Va. App. 611, 619-20 (1998)); *Farhoumand v. Commonwealth*, 288 Va. 338, 352 (2014) "([A]n indictment is not invalid if it omits or misstates the time at which an offense occurs when time is not an element of the offense, [though] each indictment must . . . sufficiently apprise[] the defendant of what he must be prepared to meet."). Code § 19.2-226 provides that "[n]o indictment or other accusation shall be quashed or deemed invalid . . . [f]or omitting to state, or stating imperfectly, the time at which the offense was committed when time is not the essence of the offense."

We will uphold the "verdict . . . if the evidence is sufficient to prove beyond a reasonable doubt that a crime occurred and that the defendant committed the crime, even though the evidence is such that there may be a reasonable doubt as to the day on which the offense occurred." *Marlowe v. Commonwealth*, 2 Va. App. 619, 623-24 (1986). "Such a result does not constitute a denial of due process of law." *Id.* at 624.

This Court has previously found that an extended period of time during which alleged sexual crimes occurred against a minor were sufficient to inform the defendant of the time of the offenses. *Clinebell v. Commonwealth*, 3 Va. App. 362, 376-78 (1986), *aff'd in part, rev'd in part*, 235 Va. 319 (1988). In *Clinebell*, this Court noted the Commonwealth had been "as specific as it could with respect to the dates in the indictment" which covered a period of about one year. *Id.* at 367. We explained "it is in the nature of child abuse cases involving a parent that an alibi defense almost always will be difficult to prove." *Id.* Though the Court of Appeals' decision was reversed in part, the Supreme Court of Virginia directly addressed the appellant's argument on this issue, explaining, "Clinebell first contends that the indictments were fatally defective because they failed to specify the exact dates of the alleged offenses. We conclude that the indictments are legally sufficient, and on this issue, we affirm the holding and rationale of the Court of Appeals." *Clinebell*, 235 Va. at 321.

Here, none of the statutes under which appellant was charged and convicted included time as an element. *See* Code §§ 18.2-61, 18.2-67.5:3, 18.2-67.1, 18.2-67.5:2, 18.2-67.2, 18.2-67.3, and 18.2-370. Thus, the time frames in the indictments and bill of particulars were sufficient to apprise appellant of "the nature and character of the offenses." *Rams*, 70 Va. App. at 42; *Farhoumand*, 288 Va. at 351. The offense dates recited in the indictments began on November 1, 2013, the date that appellant and O.B.'s family moved to the Franwill Avenue house. Further, despite the court ruling that it would allow appellant to provide "rough

estimates" of the times he was living at another location, appellant never offered any type of alibi defense. The circuit court did not abuse its discretion when it did not require the Commonwealth to provide more specific information about the date, time, and location of the offenses or by overruling appellant's objection that the lack of more specific dates prevented him from providing an adequate notice of alibi defense.

## CONCLUSION

For the reasons set forth above, we affirm the circuit court's judgment.

*Affirmed.*