COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judges Fulton and Ortiz
Argued at Richmond, Virginia

BRADY ANDREW REED

v.      Record No. 1934-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
CHIEF JUDGE MARLA GRAFF DECKER
MAY 21, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Todd M. Ritter (Hill & Rainey, on brief), for appellant.

Matthew J. Beyrau, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

A jury convicted Brady Andrew Reed of attempted strangulation and assault and battery of a

law enforcement officer. On appeal, Reed challenges the admission of certain evidence and the

sufficiency of the evidence to sustain his convictions. He also argues that the trial court abused its

discretion due to the length of the active sentence it imposed. For the reasons that follow, we affirm

the trial court's judgment.

BACKGROUND[1]

This case stems from an altercation between Reed and Deputy Reinoldo Torres of the

Chesterfield County Sheriff's Office. On January 5, 2022, Reed was arrested on unrelated

charges and taken to the Chesterfield County Jail. After Reed arrived at the jail, Torres

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

[1] Under the applicable standard of review, this Court views the evidence in the light most
favorable to the Commonwealth, as the prevailing party below. See Cellucci v. Commonwealth,
77 Va. App. 36, 42 n.1 (2023) (en banc) (sentencing); Williams v. Commonwealth, 71 Va. App.
462, 472 n.2 (2020) (admission of evidence and sufficiency).

attempted to conduct a mandatory strip search of him, and an altercation ensued. Reed was ultimately charged with attempted strangulation and assault and battery of a law enforcement officer.

At trial, Deputy Torres and Chesterfield Deputy Brent Wood testified about the altercation. Torres stated that he introduced himself to Reed and explained the strip search process. Reed first complied with the search by removing his clothing until he wore only a shirt and shorts. He then refused to further undress, expressing modesty concerns. Deputy Torres insisted that Reed cooperate and explained that every inmate must comply with the same procedure. Reed removed his tank top in a cooperative manner, but when he removed his shorts, he threw them into Torres's face. The shorts obscured the deputy's vision, and before he could remove the shorts from his face, Reed was "on" him. Reed pushed Deputy Torres against a counter and then "choked" him. After three to five seconds, Deputy Torres was able to remove Reed's hands from his neck and push him away. When Reed approached again, Torres wrestled him to the ground.

Deputy Wood entered the search room as Reed was choking Deputy Torres. Wood immediately helped to subdue and handcuff Reed. The supervising sergeant arrived and told Torres to leave the search room. The sergeant photographed a red mark on Deputy Torres's neck that had not been there before the incident.

Reed remained uncooperative, so Deputy Wood and other deputies carried him to a padded cell. Although Wood believed that Deputy Torres helped carry Reed away, Torres denied doing so. Wood acknowledged that he could have misremembered who helped him. According to Wood, they placed Reed on a bench inside the cell and removed his handcuffs.

Reed testified in his defense. He denied attacking or choking Deputy Torres and speculated that the red mark on Torres's neck was from shaving. He said that he complied with

- 2 -

Torres's instructions to remove his clothing, turn around three times, squat, and cough. Reed claimed that after he had given Deputy Torres his clothes and performed the instruction, Torres told him to "do it again." Reed refused and told Torres to "fuck off." According to Reed, Deputy Torres grabbed his wrist and tackled him. Reed testified that another deputy then entered the room and shackled his ankles while he was naked. Afterward, the two deputies carried Reed through the jail and threw him into an empty cell. Reed said that he landed on his right shoulder, elbow, hip, and knee, causing him to sustain various injuries. He added that he did not receive any medical treatment at the Chesterfield County Jail. Instead, he was later transferred to Riverside Regional Jail, where he received treatment. During cross-examination, Reed admitted that, the day before his altercation at the jail, he had sustained injuries during an unrelated fight.

The jury convicted Reed of attempted strangulation and assault and battery of a law enforcement officer. *See* Code §§ 18.2-26, -51.6, -57(C). He made a motion to set aside the verdicts, arguing that the deputies' testimony was incredible and therefore insufficient to support his convictions. The trial court denied the motion. It sentenced Reed to a total of ten years of incarceration with six years and six months suspended. This appeal followed.

ANALYSIS

Reed challenges the trial court's ruling admitting evidence about his prior altercation. He also argues that the Commonwealth failed to present evidence sufficient to support his convictions. Last, he contends that the trial court abused its discretion by imposing an unreasonable sentence. We address each of these challenges in turn.

I. Evidentiary Ruling

Reed contends that the trial court erred by allowing the Commonwealth to cross-examine him regarding his earlier fight prior to the incident at the jail. According to Reed, that altercation

was irrelevant and the danger of unfair prejudice from the evidence outweighed any probative value.

Before trial, Reed filed a motion *in limine* to prohibit the Commonwealth from introducing evidence of the charges of both the earlier assault and contributing to the delinquency of a minor, offenses that precipitated his initial arrest. He contended that this information would be unduly prejudicial. The Commonwealth "mostly agree[d]" but cautioned that "the door [could] be opened" by the defense, rendering the challenged evidence admissible. The trial court granted the motion, noting that it would reconsider the issue if the "door . . . opened."

At trial, Reed testified, denying that he attacked Deputy Torres. He claimed instead that Torres attacked him. Reed stated that he suffered injuries as a result of the deputies' mistreatment of him and he was treated for those injuries at Riverside Regional Jail. During cross-examination, the prosecutor asked the trial court to reconsider its earlier ruling on the motion *in limine*. The prosecutor argued that Reed suffered injuries during the altercation that led to his arrest in the first place. As a result, the prosecutor asked to introduce evidence of that event to rebut the suggestion posited by Reed that Deputies Wood and Torres injured him by throwing him into a jail cell. Reed objected, arguing that he was not treated for injuries at the Chesterfield Jail, which demonstrated that the injuries he was treated for at Riverside Regional Jail were sustained at the Chesterfield Jail, not before his arrest. After a brief recess, the trial court ruled that Reed's testimony "open[ed] the door for any alternative explanation for the injuries." The court admonished the Commonwealth to introduce evidence of the prior fight "without getting into the arrest."

After the ruling, the Commonwealth questioned Reed about the prior altercation. He admitted that the day before he arrived at the jail, he fought with two teenagers at a vape shop.

Reed acknowledged that he had a knife during the fight and was struck in the face, ear, chest, and legs. He claimed that the only injuries he received from the fight were to his face. He insisted that Deputies Torres and Wood inflicted the injuries to the side of his body for which he was later treated.

"[T]he 'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26 (2018)). "The abuse of discretion standard draws a line—or rather, demarcates a region—between the unsupportable and the merely mistaken, between the legal error . . . that a reviewing court may always correct, and the simple disagreement that, on this standard, it may not." *Jefferson v. Commonwealth*, 298 Va. 1, 10-11 (2019) (alteration in original) (quoting *Reyes v. Commonwealth*, 297 Va. 133, 139 (2019)). "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [appellate] court does not reverse merely because it would have come to a different result in the first instance." *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (first alteration in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)). This standard of review guides our analysis.

Reed argues that the trial court abused its discretion by admitting evidence that tended to show his criminal propensity. Generally, "evidence of other crimes, wrongs, or acts is . . . not admissible to prove the character trait of a person in order to show that the person acted in conformity" with such a trait. Va. R. Evid. 2:404(b). "Such evidence implicating an accused in other crimes unrelated to the charged offense is inadmissible because it may confuse the issues being tried and cause undue prejudice to the defendant." *McGowan v. Commonwealth*, 274 Va. 689, 694 (2007) (quoting *Guill v. Commonwealth*, 255 Va. 134, 138 (1998)). "However,

numerous exceptions to this rule authorize the admission of [prior] 'bad acts' evidence." *Ortiz v. Commonwealth*, 276 Va. 705, 714 (2008). In Virginia, bad-act or other-crimes evidence is generally admissible "if relevant[] for any purpose *other than* to show a mere propensity." *Castillo v. Commonwealth*, 70 Va. App. 394, 415 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 757 n.8, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

Reed's defense centered on his claim that Deputies Torres and Wood lied about mistreating him at the jail. In support of that theory, he testified on direct examination that the deputies shackled his legs, carried him naked through the jail, and threw him into a cell—injuring his right shoulder, elbow, hip, and knee in the process. He suggested that he received treatment for those injuries only after he was transferred to another jail. By claiming that the deputies injured him through their mistreatment, Reed opened the door to the Commonwealth's providing an alternate explanation for those injuries.

Consequently, the trial court did not abuse its discretion by permitting the Commonwealth to cross-examine him regarding the earlier fight in which he was struck in the head, chest, and legs. *See id.* (holding that the Commonwealth may cross-examine a defendant about statements made on direct examination but is "bound by the answer given"). It was appropriate for the jury to hear the competing theories about how Reed sustained his injuries and resolve that factual question.

Further, it was appropriate for the jury to consider the evidence about *when* Reed sustained injuries. Reed argues that the earlier altercation was not relevant as to how he sustained his injuries because he was not treated for injuries at the Chesterfield Jail. He suggests that the fact that he was not treated until after his transfer to Riverside Regional Jail signified that he necessarily did not arrive at the Chesterfield Jail with injuries but instead sustained them there. The jury heard Reed's testimony that he was not treated for any injuries until after he was

transferred to Riverside Regional Jail. The factual question of when Reed sustained injuries was within the jury's purview to resolve as the finder of fact.[2] *See, e.g.*, *Hughes v. Commonwealth*, 39 Va. App. 448, 463 (2002) (noting that the jury "was entitled to disbelieve" the defendant's account).

The conclusion that the challenged evidence was relevant for a permissible purpose, however, does not end the inquiry. Evidence that meets an exception to the rule is admissible only if its "legitimate probative value . . . outweighs its incidental prejudice." *Kenner v. Commonwealth*, 299 Va. 414, 427 (2021) (quoting Va. R. Evid. 2:404(b)). The responsibility for balancing these considerations "rests in the sound discretion of the trial court." *Ortiz*, 276 Va. at 715 (quoting *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990)). "The fact that some prejudice may result does not justify automatic exclusion." *Mayfield v. Commonwealth*, 59 Va. App. 839, 849 (2012) (quoting *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 196 (1987)). "Indeed, '[a]ll evidence tending to prove guilt is prejudicial to an accused.'" *Id.* (alteration in original) (quoting *Powell v. Commonwealth*, 267 Va. 107, 141 (2004)). "Virginia law . . . intervenes only when the alleged prejudice tends to inflame irrational emotions or leads to illegitimate inferences." *Thomas*, 44 Va. App. at 758.

Here, the evidence of the fight Reed had before arriving at the jail was probative of the source of his injuries. The trial court initially excluded the evidence and allowed it only after

---

[2] Reed also argues on appeal that even if the evidence that he got in an earlier altercation was admissible for this purpose, the particular evidence that the fight was with juveniles and he had a knife was not admissible. He suggests that these facts were irrelevant to the question of how he was injured. Reed did not object when the Commonwealth's attorney elicited this testimony during cross-examination, nor did he ask the trial court to give the jury a limiting instruction. *See* Rule 5A:18; *see also Bethea v. Commonwealth*, 297 Va. 730, 744 (2019) ("[N]either an appellant nor an appellate court should 'put a different twist on a question that is at odds with the question presented to the trial court.'" (quoting *Commonwealth v. Shifflett*, 257 Va. 34, 44 (1999))). Accordingly, this argument is barred pursuant to Rule 5A:18, and the Court will not consider it on appeal.

Reed testified and "open[ed] the door" for the Commonwealth to provide an "alternative explanation for [his] injuries." To the extent the evidence was prejudicial to Reed because it tended to show his propensity for physical altercations, the trial court reduced the impact of any prejudice by limiting the Commonwealth's examination and excluding testimony about Reed's arrest.

The record supports the trial court's ruling that the probative value of the evidence outweighed the danger of unfair prejudice. For these reasons, the trial court did not abuse its discretion by admitting the challenged evidence.

## II. Sufficiency of the Evidence

Reed argues that the evidence was insufficient to support his convictions because the Commonwealth's witnesses were "troublesomely inconsistent" when compared to his "coherent and plausible version of the events."[3] Reed highlights the discrepancies in the testimony of Deputies Torres and Wood about who carried Reed to the cell and whether his legs were shackled. In addition, he argues that the Commonwealth failed to present testimony from any of the other officers who allegedly carried him to the cell to corroborate Deputy Torres's testimony.

---

[3] Reed also argues that the evidence was insufficient to prove attempted strangulation because it established that his hands were on Deputy Torres's neck for only a few seconds and he suffered no injuries. That argument was not preserved for appeal by trial counsel. *See* Rule 5A:18. "In a jury trial, the defendant preserves his objections to the sufficiency of the evidence in a motion to strike at the conclusion of the Commonwealth's case if he elects to not introduce evidence of his own, or in a motion to strike at the conclusion of all the evidence or a motion to set aside the verdict if he does elect to introduce evidence of his own." *Commonwealth v. Bass*, 292 Va. 19, 33 (2016). In his renewed motion to strike and motion to set aside the jury's verdicts, Reed argued only that the "glaring discrepancies" in the deputies' testimony and Commonwealth's evidence "shock[ed] the conscience" and rendered the evidence insufficient as a matter of law. Although there are exceptions to Rule 5A:18, Reed has not asked this Court to invoke them, and the Court will not do so sua sponte. *Hogle v. Commonwealth*, 75 Va. App. 743, 756 (2022); *see also Jones v. Commonwealth*, 293 Va. 29, 39 n.5 (2017) (considering the exceptions to Rule 5:25).

The central question on appellate review of a sufficiency challenge "is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Maxwell v. Commonwealth*, 275 Va. 437, 442 (2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). An appellate court will reverse the judgment of the trial court only if it is "plainly wrong or without evidence to support it." *Clark v. Commonwealth*, 279 Va. 636, 640 (2010) (quoting *Wilson v. Commonwealth*, 272 Va. 19, 27 (2006)). "If there is evidence to support the convictions, the reviewing court [may not] substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial." *Id.* at 641.

The jury found the testimony of Deputies Torres and Wood to be credible. "Determining the credibility of witnesses . . . is within the exclusive province of the jury, which has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (alteration in original) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). "[T]his Court will not disturb the fact finder's determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Id.* at 526 (quoting *Walker v. Commonwealth*, 258 Va. 54, 70-71 (1999)). "Evidence is not 'incredible' unless it is 'so manifestly false that reasonable men ought not to believe it' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018) (quoting *Juniper v. Commonwealth*, 271 Va. 362, 415 (2006)).

Our review of the record reveals that Deputies Torres and Wood provided largely consistent accounts of the relevant events. They both described Reed's aggressive actions and testified that he choked Deputy Torres in the strip search room. The two deputies explained that they worked together to subdue and handcuff Reed on the floor of that room. In addition, the

balance of the Commonwealth's evidence, including the photograph that depicted a red mark on Deputy Torres's neck, corroborated their account. *See Lambert v. Commonwealth*, 70 Va. App. 740, 760 (2019) (holding that although corroborating evidence is unnecessary, a witness's testimony was not inherently incredible when it was corroborated by other evidence).

Although the deputies' testimony differed on some points, such as whether Deputy Torres helped carry Reed to the cell, the disparities do not compel the conclusion that either deputy's testimony was inherently incredible. It is not contrary to human experience that people with different perspectives may recall events differently or simply may be unable to recall specific details. This was a volatile situation involving assaultive behavior toward a deputy. A reasonable fact finder could readily conclude that the witnesses had different perspectives.

A jury's "evaluation[] of credibility" often involves "choosing between competing accounts offered by different witnesses." *See Commonwealth v. McNeal*, 282 Va. 16, 22 (2011). And, "the trier of fact is free to believe or disbelieve, in whole or in part, the testimony of any witness." *Rams v. Commonwealth*, 70 Va. App. 12, 38 (2019). Any inconsistency in witness testimony, therefore, is "'resolved by the fact finder,' not the appellate court." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019) (quoting *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011)).

"'[T]here can be no relief' in this Court if a witness testifies to facts 'which, if true, are sufficient' to support the conviction '[i]f the trier of the fact[] bases its decision 'upon that testimony.'" *Id.* (first and second alterations in original) (quoting *Smith v. Commonwealth*, 56 Va. App. 711, 718-19 (2010)). Deputy Torres testified that Reed shoved his chest and choked him with both hands for three to five seconds before Torres broke free. Deputy Wood heard Reed yell at Torres and saw Reed "grabbing" Deputy Torres's neck. That testimony, which the jury necessarily accepted, established the elements of the charged offenses. The evidence was

sufficient to sustain Reed's convictions for attempted strangulation and assault and battery of a law enforcement officer.

### III. Sentencing

Finally, Reed argues that the trial court abused its sentencing discretion by imposing three years and six months of active incarceration. He contends that this Court should review his sentence even though it was within the statutory range because it exceeded the discretionary sentencing guidelines.[4] Citing concerns about "widespread incarceration," he maintains that "judicial safeguards . . . beyond the level of the trial court" should exist "to protect defendants from being incarcerated for extended periods."

The law relating to appellate review of sentencing decisions is well-established. "Determinations of punishment 'are peculiarly questions of legislative policy.'" *Thomas v. Commonwealth*, 296 Va. 301, 304 (2018) (quoting *Gore v. United States*, 357 U.S. 386, 393 (1958)). When reviewing "a trial court's sentencing decision," "[a]n appellate court applies the abuse of discretion standard of review." *Cellucci v. Commonwealth*, 77 Va. App. 36, 45 (2023) (en banc). "This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie." *Id.* (quoting *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Commonwealth v. Swann*, 290 Va. 194, 197 (2015) (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "[W]hen a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse

---

[4] Reed also claims that his sentence was unconstitutionally disproportionate. This Court does not review proportionality in cases unless they involve life sentences without the possibility of parole. *Cole v. Commonwealth*, 58 Va. App. 642, 653-54 (2011); *see Vasquez v. Commonwealth*, 291 Va. 232, 240-41 (2016). We therefore do not address this claim.

of discretion."[5] *Minh Duy Du*, 292 Va. at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771-72 (2007)).

Here, the sentencing guidelines recommended between seven months and one year and eleven months of incarceration, with a midpoint of one year and one month. Reed asked the trial court to sentence him to "time served," a sentence that fell between the low end and midpoint of the discretionary guidelines. In making this request, Reed stated that his father and brother were deceased and that he lived with his mother. Defense counsel averred that Reed suffered from chronic migraines and seizures, which interfered with his ability to work. He emphasized that he had no prior felony convictions and that Deputy Torres had not been injured beyond some redness on his neck.

In contrast, the prosecutor asked the trial court to sentence Reed at or above the high end of the sentencing guidelines. He argued that Reed had not accepted responsibility for his offenses, as demonstrated by his testimony and statements in the presentence investigation report that he was not guilty. The prosecutor also emphasized that Reed's criminal history included an assault and battery of a police officer two months before the instant incident. Based on these factors as well as the underlying circumstances of the case, the prosecutor reasoned that Reed was a danger to both the public and law enforcement.

It was within the trial court's purview to weigh Reed's mitigating evidence. *Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). In explaining its upward departure from the sentencing guidelines, the court wrote that Reed displayed no remorse or acceptance of responsibility. "The sentencing guidelines are advisory only and do not require trial courts to

---

[5] To the extent Reed asks this Court to reverse existing case law, we cannot do so. *See Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017) (noting that this Court is bound by decisions of the Supreme Court of Virginia); *see also Brown v. Commonwealth*, 68 Va. App. 44, 51 n.1 (2017) (explaining the interpanel accord doctrine).

impose specific sentences." *Runyon v. Commonwealth*, 29 Va. App. 573, 577-78 (1999). The law makes clear that a judge's decision to impose a sentence outside the guidelines is "not . . . reviewable on appeal." Code § 19.2-298.01(F).

"Criminal sentencing decisions are among the most difficult judgment calls trial judges face." *Minh Duy Du*, 292 Va. at 563. "Because this task is so difficult, it must rest heavily on judges closest to the facts of the case—those hearing and seeing the witnesses, taking into account their verbal and nonverbal communication, and placing all of it in the context of the entire case." *Id.* The record demonstrates that the trial court considered the sentencing guidelines and mitigating evidence Reed cites. After considering all the circumstances, the court imposed the sentence that it deemed appropriate.

The sentence imposed was within the sentencing range set by the legislature. *See* Code §§ 18.2-10, 18.2-26, 18.2-51.6, 18.2-57(C). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

The court acted within its discretion by sentencing Reed to three years and six months of active incarceration.

CONCLUSION

The trial court did not abuse its discretion by allowing the Commonwealth to introduce evidence of the prior altercation when cross-examining Reed. The jury was entitled to accept the deputies' testimony as credible, and that testimony and other evidence supported the convictions. Finally, the court did not abuse its discretion when it imposed a sentence within the statutory sentencing range. For these reasons, the judgment is affirmed.

*Affirmed.*